**E-FILED**
Monday, 12 May, 2008  06:37:20 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DESIGN IDEAS, LTD., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  3:07-cv-03077 |
| | ) | |
| THINGS REMEMBERED INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION TO EXTEND FACT DSICOVERY

Design Ideas, Ltd. ("Design Ideas"), through its undersigned attorneys, respectfully files this motion requesting the Court to extend the period for fact discovery.  Through a course of evasive discovery tactics, Things Remembered, Inc. ("Things Remembered") has left Design Ideas critically bereft of information relating to the allegedly infringing Flower Candle Basket that is essential to Design Ideas claim of copyright infringement.  As a result, the fact discovery period must be extended by 60 days to allow Design Ideas a reasonable opportunity to discover information relating to Things Remembered's accused Flower Candle Basket, without which Design Ideas will be severely prejudiced.

Design Ideas sued Things Remembered alleging its Flower Candle Basket infringes Design Ideas copyright in its wire flower sculptures, protected by Registration No. VA 1-055-871.  The scheduling order calls for the completion of fact discovery by May 12, 2008.

1

I.      **Things Remembered Inexcusably Failed to Investigate and Produce Documents Relating to the Origin of the Flower Candle Basket.**

On October 15, 2007, Design Ideas served its first requests for Things Remembered's production of documents pursuant to Fed. R. Civ. P. 26 and 34.  A copy of Plaintiff's First Request for Defendant's Production of Documents is attached hereto as Exhibit A.  In Request No. 3, Design Ideas asked for "All documents referring or relating to the design, development, creation, importation or purchase of the Flower Candle Basket by or on behalf of defendant."

On January 3, 2008, *eighty days* after Design Ideas first served its request and nearly a month after the parties stipulated to a protective order, Things Remembered finally responded and, not waiving its General Objections to all of Design Ideas' requests, promised to "produce at a time and place mutually agreeable to the parties such non-privileged documents as may exist in its possession or control" that are responsive to Plaintiff's Request No. 3.  A copy of Defendant's Responses to Plaintiff's First Request for Production of Documents is attached hereto as Exhibit B.

The singular document produced by Things Remembered conceivably responsive to this request and relating to the origin of the Flower Candle basket consists of a brief email and its terse reply regarding whether the supplier of Things Remembered's Flower Candle Basket had previously produced any other wire products with flower motifs.  The email, dated March 29, 2005, and its response, dated March 30, 2006, both well after the introduction of the Flower Candle basket and, in fact, after Things Remembered was aware of Design Ideas' allegation of infringement, are reproduced in their entirety below and attached hereto as Exhibit C.

3/30/05

Hi Stacey,

Checked with Libra the folra motifs with formed wire like our candle basket they only developed this for TRD as per your artworks as they know this is exclusive for TRD only. So, they did not use this concepts to develope other products.

Best regards
Christina Sun

-----Original Message-----
**From:** Bertke, Stacey . [mailto:SBertke@thingsremembered.com]
**Sent:** Wednesday, March 30, 2005 5:14 AM
**To:** Frank, Ellen S.; Ibold, Charles J.; Rufener, Wendy L.; Potter, Denise L.; Sun, Christina
**Subject:** Libra- candle basket from 2001 sku #518550

Christina:
Could you please ask Libra if they had ever made or sourced **any wire items with flower motifs** prior to making our Flower Candle Basket sku# 518550. It does not matter what type of items they had made with flower motifs like those on our candle basket, we just need to know if they had ever made any items with floral motifs out of formed wire. (housewares items, fruit baskets, candle holders, bathroom items, wall hangings... anything)

If they had made items with floral wire motifs, then please ask them for how many years they had been making or sourcing this type of wire floral product.

Thanks

Stacey

Thus while Things Remembered produced no substantive information regarding the origin of the Flower Candle Basket, these emails identify tantalizing "artworks" used in its development. In her response to Stacey Bertke, Things Remembered's Merchandising Manager responsible for the Flower Candle Basket, Christina Sun, an employee of Things Remembered's sourcing agent, Associated Merchandising Corporation ("AMC"), clearly indicates that the Flower Candle Basket was developed exclusively for Things Remembered "as per [Things Remembered's] artworks." Thus, Things Remembered reveals that precisely the type of document that Design Ideas seeks did in fact exist.

Yet Things Remembered utterly failed to conduct even a reasonable inquiry as to whether such significant documents are still available. Along with Things Remembered's Responses to Plaintiff's First Set of Interrogatories and its produced documents, David Stefko, Senior Vice

3

President, Chief Administrative Officer and Chief Financial Officer of Things Remembered, submitted a standard declaration regarding Things Remembered's production response as required by Fed. R. Civ. P. 26(g)(1). A copy of this declaration is attached hereto as Exhibit D. Notwithstanding this declaration, during his deposition by Design Ideas, on April 24, 2008, Mr. Stefko admitted that in investigating Things Remembered's alleged infringement of Design Ideas wire flower sculptures, he had never spoken to Stacey Bertke, a Things Remembered employee who was unquestionably involved in the development of the Flower Candle Basket. Even more disconcerting is that despite testifying to Things Remembered's duty and normal practice of maintaining business records such as the files of Ms. Bertke even after she left the employ of Things Remembered, and in direct contradiction to his obligation as the declarant to ensure that Things Remembered conducted a reasonable investigation in accordance with Fed. R. Civ. P. 26, Mr. Stefko admitted that he had not reviewed Ms. Bertke's files, nor was he aware that anyone else had. Excerpts of the transcript of David Stefko's deposition are attached hereto as Exhibit E. Mr. Stefko's declaration was disingenuous and Things Remembered has clearly failed to undertake a reasonable investigation for the relevant documents as requested by Design Ideas.

Things Remembered is not excused from its duty under Federal Rule 26(b) simply because the Flower Candle Basket is but one of hundreds of products and was introduced six years ago in 2002. Things Remembered was on notice that it could reasonably anticipate a lawsuit for infringement of Design Ideas' intellectual property as early as September 3, 2004, the date on which Design Ideas sent a cease and desist letter to Things Remembered clearly identifying both its copyright registration for the wire flower sculptures and Things Remembered's accused product. This is less than three years after the Flower Candle Basket

was introduced and Things Remembered had to preserve any documents relating to the Flower Candle Basket, particularly those concerning its origin and development.

Furthermore, Design Ideas offers at least as many products as Things Remembered, and at the request of things Remembered, has produced exactly the sort of documents relating to the origin of its copyrighted wire flower sculptures, introduced eight years ago in 2000, that it expects from Things Remembered. For example, Design Ideas produced numerous documents containing sketches of its wire flower sculptures and instructions for their rendering into physical pieces. See DI000174 – DI000196, attached hereto as Exhibit F.

As a result of Things Remembered's failure to produce relevant documents and information, the onus of discovery has been overloaded on Design Ideas. To combat Things Remembered's utter failure to produce information relating to the origin of the Flower Candle Basket, Design Ideas has served additional written discovery on Things Remembered, to which Things Remembered has objected as untimely, despite being given a full 30 days to respond prior to the close of fact discovery. Design Ideas intends to move this Court to compel Things Remembered to supply substantive answers to Design Ideas second written discovery requests.

Setting these second requests aside, Things Remembered has failed to produce documents regarding the origin of the accused Flower Candle Basket and failed to undertake a reasonable investigation that might uncover such documents. This shortcoming is inexcusable and has left Design Ideas to probe the recollection of witnesses as its primary source of information relating to the Flower Candle Basket. Although Design Ideas has diligently undertaken this task, encountering Things Remembered's further obstruction discussed below, Design Ideas has simply run out of time with critical witnesses remaining unquestioned.

## II.    Things Remembered has Critically Misled and Obstructed Design Ideas Efforts to Discover Information Relating to the Origin of the Flower Candle Basket.

### A. __Things Remembered misled Design Ideas as to a precursor of the Flower Candle Basket.__

As a result of Things Remembered's non-compliance with its duty under the Federal Rules and Design Ideas' production request, Design Ideas has undertaken an ambitious schedule of depositions intended to uncover evidence relevant to the origin of the Flower Candle Basket and central to the alleged copyright infringement.[1]  However, Things Remembered frustrated Design Ideas' efforts with a substantial misrepresentation in response to an interrogatory from Design Ideas relating to the origin of the Flower Candle Basket.  This misrepresentation caused Design Ideas to waste considerable resources in preparing for depositions and deposing witnesses, which resources could have been directed to discovering relevant information but for the misrepresentation.

Design Ideas served its first set of interrogatories to Things Remembered on October 15, 2007.  A copy of Plaintiff's First Set of Interrogatories to Defendant is attached hereto as Exhibit G.  In Interrogatory No. 4, Design Ideas requested detail concerning the origin of the Flower Candle Basket.  Eighty days later, Things Remembered responded, indicating in part that Things Remembered showed its vendor "images of a heart shaped flower candle box previously sold by

---

[1] To prove its case in chief, Design Ideas must demonstrate that it holds a valid copyright in its wire flower sculptures, and that Things Remembered copied Design Ideas' protectable expression.  *See Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 507 (7th Cir. 1994). The burden of proving that Things Remembered copied Design Ideas' protectable expression can be satisfied by demonstrating that Things Remembered had access to Design Ideas' wire flower sculptures and that the Flower Candle Basket is substantially similar to Design Ideas' wire flower sculptures. *See Id.*  Information relating to the origin and development of the Flower Candle Basket bears on these fact issues relating to copying.

6

Things Remembered."  A copy of Defendant's Response to Plaintiff's Interrogatory No. 4 is attached hereto as Exhibit H.

This clear statement that Things Remembered previously sold a *flower* candle basket prompted Design Ideas to develop a substantial line of questioning regarding this alleged precursor to the Flower Candle Basket in preparation for a week of depositions of Things Remembered employees expected to have knowledge of both the "heart shaped flower candle box" identified in response to Interrogatory No. 4 and the accused Flower Candle Basket, information paramount to Design Ideas' claim of copyright infringement.

Only during the deposition of Ellen Frank on April 23, 2008, and after the depositions of Stacey Bertke and Nelson Tejada, Vice-President and General Merchandising Manager for Things Remembered, did counsel for Things Remember reveal that the response to Plaintiff's Interrogatory No. 4 contained an error.  An excerpt of the transcript of Ellen Frank's deposition is attached hereto as Exhibit I.  Things Remembered subsequently amended its response to Design Ideas' Interrogatory No. 4 on April 24, 2008 by omitting the critical word "flower." Things Remembered's amended response to Design Ideas' Interrogatory No. 4 is attached hereto as Exhibit J.

The consistent absence of recollection regarding the conception, creation, sourcing, and or development of the Flower Candle Basket by those intimately involved is simply not credible. When asked about the Flower Candle Basket, Things Remembered employees who were involved with that product and ought to have had intimate knowledge of its conception and development simply could not recall with any confidence even the most basic information. Furthermore, what little information these witnesses could recall about the Flower Candle Basket does not agree.

Design Ideas does not expect the memories of Things Remembered to be infallible. Instead, through the depositions of 4 employees, including the manager of product development, each of whom was directly involved with or responsible for the Flower Candle Basket, Design Ideas has sought to coalesce some information relating to the accused product. Among others, Design Ideas deposed Stacey Bertke, Ellen Frank, Suzanne Sutter and Nelson Tejada, all of whom admit to being responsible for and involved with the development of the Flower Candle Basket, but none of whom can remember any unambiguous information about the origin of that product.

In the face of this incredible chorus of things forgotten, Design Ideas has not yet assembled information relating to the origin of the Flower Candle Basket that is essential to support its claim of copyright infringement. This claimed deficiency in recollection is made even more improbable by forthright testimony during depositions of Design Ideas' employees by Things Remembered. Three of Design Ideas' employees were deposed by Things Remembered and all three gave detailed and credible information relating to its wire flower sculptures. Jenna Walsh, Design Ideas' designer who initially conceived of and sketched the wire flower sculptures testified about her role in their development. Chris Hardy, Design Ideas' Director of Design, also described the development of the wire flower sculptures in detail, and Yobu Du, co-owner of Design Ideas' Chinese operation and who was responsible for causing the manufacture of the wire flower sculptures, also testified in detail about the creation, development and manufacture of the copyrighted wire flower sculptures. Thus, in addition to providing Things Remembered with numerous documents relating to the conception and development of its wire flower sculptures, Design Ideas substantiated those papers with testimony describing that process. In light of Design Idea's candid cooperation, Things Remembered's failure to provide

8

the same through a combined lack of documents and meaningful testimony demonstrates, at least, the absence of a reasonable effort to comply with Design Ideas' discovery requests under Fed. R. Civ. P. 26 and is reason to extend the period for fact discovery.

**B.  Things Remembered failed to identify key witnesses with information concerning the development of the Flower Candle Basket.**

As part of its Interrogatory No. 2, a copy of which is attached hereto as Exhibit H, Design Ideas asked Things Remembered to identify all witnesses with information concerning the creation and design of the Flower Candle Basket. In its response, a copy of which is attached hereto as Exhibit I, Things remembered identified 4 employees (all of whom have now been deposed by Design Ideas) as "having responsibilities for the marketing, advertisement, promotion, distribution, and/or sale of the Flower Candle Basket."

Things Remembered did not identify a single individual who has, or should have had knowledge relating to the origin of the Flower Candle Basket.  Although testimony from depositions of the four identified revealed little in the way of concrete and substantive information relating to the development of the Flower Candle Basket, each of those individuals clearly played a role in that process.  For example, Stacey Bertke, the merchandising manager responsible for this product admitted that though she couldn't remember their substance with any clarity, she and Ellen Frank, director of merchandising and product development, reviewed drawings of the Flower Candle Basket in its development and indicated that Nelson Tejada, general merchandising manager, would have reviewed a physical sample of the Flower Candle

Basket which admittedly existed. An excerpt of the transcript of Stacey Bertke's deposition is attached hereto as Exhibit K. (PG 42-46 ish).

Similarly, Suzanne Sutter, President of Things Remembered at that time, admitted to a role in the development process, testifying that she was in the vendor's showroom where the Flower Candle Basket, or its precursor, before it was developed to the specification of Things Remembered, was sourced. An excerpt of the transcript of Suzanne Sutter's deposition is attached hereto as Exhibit L. Things Remembered failed to identify these individuals as having any role in the origin and development of the Flower Candle Basket, which they clearly did.

Even more unfair, however, is that Things Remembered completely failed to indentify Trisha Derry, its only designer, who must necessarily have been involved with the Flower Candle Basket, and particularly with any drawings associated with the development of that product. See, for example, testimony from Ellen Frank, an excerpt of which is attached hereto as Exhibit M, indicating that Trisha Derry would generate all product related artwork on behalf of Things Remembered, and recall that Christina Sun indicated that the Flower Candle Basket was "developed per [Things Remembered's] artworks." Trisha Derry was not revealed to Design Ideas until the deposition of Ellen Frank on April 23, 2008, *one hundred and ninety-two days* after Design Ideas requested the identity of such a person and a mere 19 days before the close of fact discovery. Things Remembered forestalled the identification of a key witness until such time that Design Ideas could not prepare for and take her deposition given its already scheduled and outstanding discovery efforts. It is simply incredible that faced with its obligation under Fed. R. Civ. P. 26(a)(1) and Design Ideas' Interrogatory No. 2, Things Remembered failed to identify its only product designer as even possibly having information relevant to the development of the Flower Candle Basket.

**III.    Design Ideas Should be Allowed a Reasonable Opportunity to Continue**

**Discovery of Information Relating to the Flower Candle Basket.**

Despite Design Ideas' and best efforts to discover information relating to the origin of the Flower Candle Basket within the fact discovery period, shouldering an overloaded burden as a result of Things Remembered's less than forthcoming disclosure and production, Design Ideas has simply run out of time. Nevertheless, Design Ideas believes that given a reasonable extension to the fact discovery period, it can assemble pertinent information relating to the Flower Candle Basket notwithstanding Things Remembered's expected obstruction.

Design Ideas should be given an opportunity to depose Things Remembered's designer, Trisha Derry who has just been identified as very likely to be involved in the development of the Flower Candle Basket. This witness is likely to have information pertaining to the "artworks" alluded to in the email conversation between Stacey Bertke and Christina Sun.

Moreover, depositions of Things Remembered employees have suggested for the first time, in contradiction to documents produced by Things Remembered months prior indicating that the Flower Candle Basket was developed exclusively for Things Remembered "as per [its] artworks" that Things Remembered's vendor may have played a more substantial role in the development of the Flower Candle Basket. Design Ideas has attempted to investigate this statement, but its author, Things Remembered's sourcing agent, Christina Sun is a foreign national outside of this Court's subpoena power. As its only reasonable avenue to depose Christina Sun, Design Ideas has subpoenaed her employer, AMC for a deposition and production of documents under Fed. R. Civ. P. 30(b)(6) before the close of fact discovery. Additionally, Design Ideas has issued subpoenas for two additional AMC personnel who appear to have

11

information pertaining to the origin of the Flower Candle Basket.  Although AMC initially resisted these subpoenas as unreasonable, Design Ideas has since worked with AMC to find a mutually convenient date, necessarily after the imminent close of fact discovery, which would allow these critical depositions to proceed and allow Design Ideas a deserved opportunity to continue its discovery.

Trisha Derry and Christina Sun may very well be able to provide information about the development of the Flower Candle Basket and Design Ideas should be permitted a reasonable opportunity to question these witnesses in a final attempt to reconcile the disparate notions of how this product came into being according to testimony given by Things Remembered employees thus far.

At the end of the scheduled period for fact discovery, Design Ideas is left with almost no information relating to the origin of the Flower Candle Basket, information that is central to its claim of copyright infringement.  What has emerged, however, through a determined course of depositions, is that the very type of document which Design Ideas seeks information about existed, at least, in the form of an "artwork" used in the development of the Flower Candle Basket, that Things Remembered didn't bother to look for this or other relevant documents, and that Design Ideas has not yet been able to depose the only remaining witnesses who might have knowledge about the "artwork" and the origin of the Flower Candle Basket more broadly.

## IV.    CONCLUSION

For the foregoing reasons, Design Ideas respectfully requests that the Court extend the fact discovery period by 60 days and thereby allow Design Ideas a reasonable opportunity to continue

its efforts to discover information pertinent to the origin of the Flower Candle Basket,

information critical to its claim of copyright infringement.


Respectfully submitted,

**DESIGN IDEAS, LTD.,**

by its attorneys,

SAIDMAN **DesignLaw** Group, LLC


Dated:    May 12, 2008          By:    s/Michael T. Platt
                                       Michael T. Platt
                                       Garfield Goodrum, Principal
                                       8601 Georgia Avenue
                                       Silver Spring, MD  20910
                                       (301) 585-8601
                                       fax: (301) 585-0138
                                       michael.platt@designlawgroup.com
                                       garfield.goodrum@designlawgroup.com


13

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DESIGN IDEAS, LTD., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:07-cv-03077 |
| | ) |
| THINGS REMEMBERED INC., | ) |
| | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S FIRST REQUEST FOR
## DEFENDANT'S PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, plaintiff requests

defendant to respond to the following requests for production of documents and produce

the requested documents and things within thirty (30) days of service at the offices of

SAIDMAN DesignLaw Group, 8601 Georgia Ave., Suite 603, Silver Spring, MD 20910.

### DEFINITIONS

1.    Defendant means (a) Things Remembered Inc., its predecessor

corporations, successor corporations, each subsidiary corporation, affiliated or related

companies, and divisions; (b) each of its consultants, accountants, attorneys and

independent contractors which have contractual relations with it; and (c) any person

acting or purporting to act or, at the time of the stated subject matter, was acting or

purporting to act for or on behalf of it or anyone under its control, direction or

instruction.

2.    Flower Candle Basket means the decorative container made of metal wires

and other metal components, including heart shaped wires connected to each other by

straight wire supports with flower shaped wire figures between certain of the straight wire supports, that was offered by defendant and sometimes known by Model No. 518550.

3.     Flower Sculptures means the three flower wire sculptures created by Design Ideas and depicted in paragraph 9 of the Complaint (Document 1) and any objects containing them or any of them, e.g., the votive cups depicted in paragraph 9 of the Complaint or the fruit basket depicted in paragraph 10 of the Complaint.

4.     Document in either the singular or plural form, shall be construed in its broadest sense and shall include, but is not limited to all written, printed, typed, recorded, graphic, stenographic, computer generated, computer stored, and electronically stored matter of every kind and description.

5.     If any document responsive to a request was at one time in existence, but has been lost, discarded, destroyed. or is otherwise presently unavailable, identify such document as completely as possible, providing as much of the following information as possible:

a. the type of document;

b. its date;

c. the date or approximate date it was lost, discarded, destroyed or otherwise became unavailable;

d. the reason or reasons for disposing of the document if discarded or destroyed;

e. the circumstances and manner in which it was lost, discarded, destroyed or otherwise became unavailable;

2

   f. the identity of all persons authorizing or having knowledge of the circumstances
      surrounding the disposal of the documents;

   g. the identity of all persons who lost, discarded, destroyed or otherwise caused
      the unavailability of the document; and

   h. the document request to which such document is responsive.

   6.      "Relating to" includes pertaining to, referring to or having as its subject

matter, directly or indirectly, expressly or impliedly the subject matter of the specific

interrogatory.

   7.      "Person" means the plural as well as the singular and includes any natural

person and any firm corporation, association or partnership or other form of legal entity.

   8.      If any document responsive to these requests is withheld under any claim

of privilege or confidentiality, defendant shall provide a list which identifies the subject

matter for which privilege or confidentiality is claimed, including at least the following

information:

   a. nature and date of the  subject matter;

   b. author;

   c. the person or persons to whom the subject matter was conveyed, either orally or
      in writing together with the person(s) job title or position;

   d. the basis upon which the privilege is claimed; and

   e. the request to which each claim of privilege responds.

## REQUESTS

1.     All documents referring or relating to patent, trademark or copyright infringement
litigations and arbitrations in which defendant was or is a party.

3

2.    Exemplars of all versions of the Flower Candle Basket designed, manufactured, marketed or sold by defendant, including all packaging and inserts, both printed and on digital media.

3.    All documents referring or relating to the design, development, creation, manufacture, importation or purchase of the Flower Candle Basket by or on behalf of defendant.

4.    All documents referring or relating to defendant's distribution and sale of the Flower Candle Basket.

5.    All documents referring or relating to returns of the Flower Candle Basket.

6.    All documents constituting, or referring or relating to, defendant's advertising, promotion or marketing of the Flower Candle Basket, including all catalogs, advertisements, price sheets, flyers and brochures depicting or referring to the Flower Candle Basket.

7.    All documents referring or relating to defendant's profits from sales of the Flower Candle Basket.

8.    All documents referring or relating to costs incurred by defendant in creating, designing, developing, importing, manufacturing, distributing or selling the Flower Candle Basket.

9.    All documents referring or relating to the disposition of Flower Candle Baskets in existence when defendant ceased selling the Flower Candle Basket.

10.    All documents evidencing, or referring or relating to, licensing, assignment, transfer, hypothecation, or conveyance of any rights in the Flower Candle Basket or the wire flower sculptures contained therein.

11.    All documents constituting, or referring or relating to, any comparison of the Flower Candle Basket with the Flower Sculptures or any other product of plaintiff.

12.    All documents constituting, or referring to any copyright or patent searches on the Flower Candle Basket or its constituent parts.

13.    All documents constituting, referring or relating to, or evidencing, defendant's receipt of any catalogs, advertisements, price sheets, flyers or brochures published by plaintiff or depicting plaintiff's products.

14.    All documents constituting, referring or relating to, or evidencing, any orders by defendant for any of plaintiff's products.

4

15.    All documents evidencing, or supporting, or relating to, defendant's denial at paragraph 9 of its Answer (Document 7) that there is any originality in the Flower Sculptures.

16.    All documents evidencing, or supporting, or relating to, defendant's denial at paragraph 10 of its Answer (Document 7) that there is any creativity or originality in the Flower Sculptures.

17.    All documents evidencing, or supporting, or relating to, defendant's Affirmative Defense paragraphs 1 through 8 of its Answer (Document 7).

18.    All documents relied upon by defendant in preparing responses to Plaintiff's First Request for Production of Documents.

19.    Documents sufficient to identify defendant's officers since 1999.

20.    Documents sufficient to identify defendant's employees responsible for research, product conception, engineering, product development, testing, manufacturing, licensing, sales and marketing of Flower Candle Baskets since January 1, 1995.

21.    All organizational charts that identify the persons employed by defendant in connection with research, product conception, engineering, product development, testing, manufacturing, licensing, sales and marketing Flower Candle Baskets since January 1, 1995.

22.    All documents and things referred to or relied upon in preparing defendant's Answer.

23.    All documents and things that refer or relate to the qualification, publications, employment or prior testimony of any expert retained or employed by defendant in this action.

24.    All documents and things that refer or relate to communications between defendant, or its agent(s), representative(s), attorney(s) and any person who defendant expects to call as a witness at any trial or hearing in this action, including without limitation any expert witness.

25.    All documents and things prepared by or for an expert witness retained or employed in this action by or for defendant relating to any and all opinions of such witnesses, facts known, the cases for such opinions and the data or other information considered by such witness.

5

Respectfully submitted,

**DESIGN IDEAS, LTD.,**

by its attorneys,

**SAIDMAN DesignLaw Group**

Dated:  October 15, 2007  By:

Michael T. Platt
Garfield Goodrum
8601 Georgia Avenue
Silver Spring, MD  20910
(301) 585-8601
fax: (301) 585-0138
garfield.goodrum@designlawgroup.com
Attorney Goodrum is admitted in MA, and not yet admitted in MD.

## CERTIFICATE OF SERVICE

I certify that on October 15, 2007, a copy of the above and foregoing Plaintiff's Request for Defendant's First Production of Documents was caused to be served on opposing counsel of record by U.S. Mail, Postage Prepaid, properly addressed.

R. Effie Hale

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| DESIGN IDEAS, LTD., | ) |
| | ) Case No. 07-CV-03077 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THINGS REMEMBERED, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S RESPONSES TO PLAINTIFF'S
## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant, Things Remembered, Inc. ("Things Remembered"), hereby submits its

written responses to Plaintiff's First Request for Defendant's Production of Documents, served

by plaintiff, Design Ideas, Ltd. ("Design Ideas"), subject to the general and specific objections

set forth below.

### GENERAL OBJECTIONS

The following General Objections apply to and are incorporated into each of Things

Remembered's responses to each of Design Ideas' individual production requests, as set forth

herein. Things Remembered's responses to each of Design Ideas' production requests are made

without waiver of the following General Objections.

1.    Things Remembered objects to each production request to the extent it seeks

documents or things protected from discovery by the attorney-client privilege, the work product

doctrine, and/or any other applicable privilege or immunity. Nothing contained in these

objections and responses is intended to be, or in any way constitutes, a waiver of any applicable

privilege, immunity, or doctrine. Things Remembered also objects to the identification and

logging of privileged documents generated after the filing of this action, as the volume of documents would render such logging unduly burdensome.

2.    Things Remembered objects to each production request, definition, and/or instruction to the extent that it seeks to impose requirements or obligations upon Things Remembered different from or in addition to those imposed by the Federal Rules of Civil Procedure and/or the Local Rules for the Central District of Illinois. While Things Remembered may choose to use Design Ideas' definitions and instructions as a guide, Things Remembered does not concede or stipulate to their validity or appropriate usage in these proceedings. Things Remembered will respond to non-objectionable production requests in good faith and in a reasonable way, and will satisfy its obligations under the Federal Rules and the Local Rules.

3.    Things Remembered objects to each production request to the extent it calls for legal conclusions.

4.    Things Remembered objects to each production request to the extent that it seeks documents or things not in Things Remembered's possession, custody, or control.

5.    Things Remembered objects to Design Ideas' production requests to the extent they seek documents or things already in Design Ideas' possession, publicly available, and/or available from other sources that are more convenient, less burdensome, and/or less expensive to Things Remembered.

6.    Things Remembered objects to the phrasing of the document requests to the extent that the terms used therein have legal significance to the allegations of the Complaint. Nothing in these, or any other responses to Design Ideas' discovery, can be taken as an admission that Things Remembered agrees with Design Ideas' use or interpretation of the relevant terms.

2

7.     Things Remembered objects to Design Ideas' definition of "Defendant" to the extent it purports to include "any person acting or purporting to act or, at the time of the stated subject matter, was acting or purporting to act for or on behalf of [Things Remembered] or anyone under its control or instruction" as overly broad and vague, thereby rendering the production requests unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

8.     Any objection or lack of objection to a production request is not to be deemed an admission by Things Remembered that such documents or things exist or that Things Remembered possesses documents or things called for in the production request.

9.     Things Remembered's investigation of matters relevant to these production requests is ongoing. Things Remembered accordingly reserves the right to supplement its responses. Things Remembered also reserves the right to supplement its responses up to and including the time of trial in the event that it discovers additional documents and/or things responsive to Design Ideas' production requests, and further reserves the right to supplement any objections based on newly discovered documents, information, and/or positions taken by Design Ideas as to the scope of the production requests.

3

## SPECIFIC OBJECTIONS AND RESPONSES

1.      All documents referring or relating to patent, trademark or copyright infringement litigations and arbitrations in which defendant was or is a party.

### RESPONSE:

Things Remembered objects to this request as overly broad, unduly burdensome,

harassing, not reasonably calculated to lead to the discovery of admissible evidence, calling for

the production of privileged documents, and duplicative of the remaining production requests

with respect to the present action.

Subject to and without waiving these objections and the General Objections set forth

above, Things Remembered shall produce at a time and place mutually agreeable to the parties

such non-privileged documents as may exist in its possession or control relating to this action,

other than copies of pleadings filed and served in this action.

2.      Exemplars of all versions of the Flower Candle Basket designed, manufactured, marketed or sold by defendant, including all packaging and inserts, both printed and on digital media.

### RESPONSE:

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties a representative

sample of each of the requested things, to the extent they can be found.

3.      All documents referring or relating to the design, development, creation, manufacture, importation or purchase of the Flower Candle Basket by or on behalf of defendant.

4

**RESPONSE:**

Subject to and without waiving the General Objections set forth above, Things
Remembered shall produce at a time and place mutually agreeable to the parties such non-
privileged documents as may exist in its possession or control.

4.    All documents referring or relating to defendant's distribution and sale of the
Flower Candle Basket.

**RESPONSE:**

Things Remembered objects to this request as overly broad, unduly burdensome,
harassing in its requirement that "all" documents referring or related to its sales of the accused
product.

Subject to and without waiving the General Objections set forth above, Things
Remembered shall produce at a time and place mutually agreeable to the parties documents
sufficient to show the sales volume in units and dollars for the accused Flower Candle Basket.

5.    All documents referring or relating to returns of the Flower Candle Basket.

**RESPONSE:**

Subject to and without waiving the General Objections set forth above, Things
Remembered shall produce at a time and place mutually agreeable to the parties such non-
privileged documents as may exist in its possession or control.  As presently advised, no such
documents exist.

6.    All documents constituting, or referring or relating to, defendant's advertising,
promotion or marketing of the Flower Candle Basket, including all catalogs, advertisements,
price sheets, flyers and brochures depicting or referring to the Flower Candle Basket.

5

**RESPONSE**:

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties such non-

privileged documents as may exist in its possession or control.


7.    All documents referring or relating to defendant's profits from sales of the Flower
Candle Basket.

**RESPONSE:**

Things Remembered objects to this request as overly broad, unduly burdensome,

harassing in its requirement that "all" such documents be produced.

Subject to and without waiving this objection and the General Objections set forth above,

Things Remembered shall produce at a time and place mutually agreeable to the parties

documents sufficient to show its profits from sales of the accused Flower Candle Basket.


8.    All documents referring or relating to costs incurred by defendant in creating,
designing, developing, importing, manufacturing, distributing or selling the Flower Candle
Basket.

**RESPONSE:**

Things Remembered objects to this request as overly broad, unduly burdensome,

harassing in its requirement that "all" such documents be produced. Things Remembered also

objects to this interrogatory as being based in part on false presumptions, as Things Remembered

did not create, design, develop, or manufacture the accused product.

Subject to and without waiving these objections and the General Objections set forth

above, Things Remembered shall produce at a time and place mutually agreeable to the parties

6

documents sufficient to show its costs from acquiring, distributing, and selling the accused

Flower Candle Basket.

9.    All documents referring or relating to the disposition of Flower Candle Baskets in
existence when defendant ceased selling the Flower Candle Basket.

**RESPONSE:**

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties such non-

privileged documents as may exist in its possession or control.

10.    All documents evidencing, or referring or relating to, licensing, assignment,
transfer, hypothecation, or conveyance of any rights in the Candle Flower Basket or the wire
flower sculptures contained therein.

**RESPONSE:**

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties such non-

privileg0ed documents as may exist in its possession or control. As presently advised, no such

documents exist.

11.    All documents constituting, or referring or relating to, any comparison of the
Flower Candle Basket with the Flower Sculptures or any other product of plaintiff.

**RESPONSE:**

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties such non-

privileged documents as may exist in its possession or control, other than copies of pleadings

filed and served in this action.

7

12.    All documents constituting, or referring to any copyright or patent searches on the Flower Candle Basket or its constituent parts.

**RESPONSE:**

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties such non-

privileged documents as may exist in its possession or control. As presently advised, no such

documents exist.

13.    All documents constituting, referring or relating to, or evidencing, defendant's receipt of any catalogs, advertisements, price sheets, flyers or brochures published by plaintiff or depicting plaintiff's products.

**RESPONSE:**

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties such non-

privileged documents as may exist in its possession or control.

14.    All documents constituting, referring or relating to, or evidencing any orders by defendant for any of plaintiff's products.

**RESPONSE:**

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties such non-

privileged documents as may exist in its possession or control. As presently advised, no such

documents exist.

15.    All documents evidencing, or supporting or relating to, defendant's denial at paragraph 9 of its Answer (Document 7) that there is any originality in the Flower Sculptures.

8

**RESPONSE:**

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties such non-

privileged documents as may exist in its possession or control.

16.    All documents evidencing, or supporting, or relating to, defendant's denial at
paragraph 10 of its Answer (Document 7) that there is any creativity or originality in the Flower
Sculptures.

**RESPONSE:**

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties such non-

privileged documents as may exist in its possession or control.

17.    All documents evidencing, or supporting, or relating to, defendant's Affirmative
Defense at paragraphs 1 through 8 of its Answer (Document 7).

**RESPONSE:**

Things Remembered objects to responding to this production request with respect to its

affirmative defenses numbered 1 through 4, as those defenses deal with plaintiff's patent

infringement allegations, which have been bifurcated from the copyright infringement

allegations.

Subject to and without waiving this objection and the General Objections set forth above,

Things Remembered shall produce at a time and place mutually agreeable to the parties such

non-privileged documents as may exist in its possession or control that pertain to its affirmative

defenses numbered 5 through 8.

9

18.    All documents relied upon by defendant in preparing responses to Plaintiff's First
Request for Production of Documents.

## RESPONSE:

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties such non-

privileged documents as may exist in its possession or control.

19.    Documents sufficient to identify defendant's officers since 1999.

## RESPONSE:

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties documents

responsive to this production request.

20.    Documents sufficient to identify defendant's employees responsible for research,
product conception, engineering, product development, testing, manufacturing, licensing, sales
and marketing of Flower Candle Baskets since January 1, 1995.

## RESPONSE:

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties documents

responsive to this production request, to the extent such documents exist.

21.    All organizational charts that identify the persons employed by defendant in
connection with research, product conception, engineering, product development, testing,
manufacturing, licensing, sales and marketing Flower Candle Baskets since January 1, 1995.

10

**RESPONSE:**

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties documents

responsive to this production request, to the extent such documents exist.

22.    All document and things referred to or relied upon in preparing Defendant's
Answer.

**RESPONSE:**

Subject to and without waiving the General Objections set forth above, Things

Remembered shall produce at a time and place mutually agreeable to the parties such non-

privileged documents as may exist in its possession or control.

23.    All documents and things that refer or relate to the qualification, publications,
employment or prior testimony of any expert retained or employed by defendant in this action.

**RESPONSE:**

Things Remembered objects to this production request as being premature. Things

Remembered also objects to this production request as unduly burdensome and harassing to the

extent it calls for the production of documents and things not required by Fed. R. Civ. P. 26

and/or the Court's Scheduling Order of September 11, 2007.

Subject to and without waiving these objections and the General Objections set forth

above, Things Remembered shall make expert disclosures as required by Fed. R. Civ. P. 26

and/or the Court's Scheduling Order of September 11, 2007.

24.    All documents and things that refer or relate to communications between
defendant, or its agent(s), representative(s), attorney(s) and any persons who defendant expects

11

to call as a witness at any trial or hearing in this action, including without limitation any expert witness.

**RESPONSE:**

Things Remembered objects to this production request as being premature.

Subject to and without waiving this objection and the General Objections set forth above,

Things Remembered shall produce at a time and place mutually agreeable to the parties such

non-privileged documents as may exist in its possession or control. As presently advised, no

such documents exist.

25. All documents and things prepared by or for an expert witness retained or employed in this action by or for defendant relating to any and all opinions of such witnesses, facts known, the cases for such opinions and the data or other information considered by such witness.

**RESPONSE:**

Things Remembered objects to this production request as being premature. Things

Remembered also objects to this production request as unduly burdensome and harassing to the

extent it calls for the production of documents and things not required by Fed. R. Civ. P. 26

and/or the Court's Scheduling Order of September 11, 2007.

Subject to and without waiving these objections and the General Objections set forth

above, Things Remembered shall make expert disclosures as required by Fed. R. Civ. P. 26

and/or the Court's Scheduling Order of September 11, 2007.

12

3:07-cv-03077-JES-CHE   # 16-2   Page 19 of 21

Respectfully submitted,

Dated: January 3, 2008

Philip J. Moy Jr.
Richard J. Minnich
John S. Zanghi
FAY SHARPE LLP
1100 Superior Avenue
Seventh Floor
Cleveland, OH 44114-2579
Telephone: 216-861-5582
Facsimile: 216-241-1666

Carl R. Draper
Bar No. 3128847
FELDMAN, WASSER, DRAPER & BENSON
1307 South Seventh Street
Springfield, IL 62703
Telephone: 217-544-3403
Facsimile: 217-544-1593
Email: cdraper@feldwass.com

Attorneys for Defendant
THINGS REMEMBERED, INC.

13

## CERTIFICATE OF SERVICE

I hereby certify that on January $\underline{3}$, 2008, I mailed copies of the foregoing
DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS by United States Postal Service to the following attorneys for plaintiff:

Paul Bown
BROWN, HAY & STEPHENS, LLP
205 South Fifth Street
Suite 700
Springfield, IL 62701

Michael R. Platt
Garfield Goodrum
SAIDMAN DESIGN LAW GROUP
8601 Georgia Avenue
Silver Spring, MD 20910

Philip J. Moy Jr.
FAY SHARPE LLP
1100 Superior Avenue
Seventh Floor
Cleveland, OH 44114-2579
Telephone: 216-861-5582
Facsimile: 216-241-1666

14

Exhibit C
Case No. 03077-JES-CHE    # 16-2    Page 21 of 21

Page 1 of 1

**Ibold, Charles J.**

**REDACTED**

3/30/05

Hi Stacey,

Checked with Libra the folra motifs with formed wire like our candle basket they only developed
this for TRD as per your artworks as they know this is exclusive for TRD only. So, they did
not use this concepts to develope other products.

Best regards
Christina Sun

-----Original Message-----
**From:** Bertke, Stacey . [mailto:SBertke@thingsremembered.com]
**Sent:** Wednesday, March 30, 2005 5:14 AM
**To:** Frank, Ellen S.; Ibold, Charles J.; Rufener, Wendy L.; Potter, Denise L.; Sun, Christina
**Subject:** Libra- candle basket from 2001 sku #518550

Christina:
Could you please ask Libra if they had ever made or sourced **any wire items with flower motifs** prior to making
our Flower Candle Basket sku# 518550. It does not matter what type of items they had made with flower motifs
like those on our candle basket, we just need to know if they had ever made any items with floral motifs out of
formed wire. (housewares items, fruit baskets, candle holders, bathroom items, wall hangings... anything)

If they had made items with floral wire motifs, then please ask them for how many years they had been making or
sourcing this type of wire floral product.

Thanks

Stacey

Privileged/Confidential Information may be contained in this message. If you are not the addressee
indicated in this message (or responsible for delivery of the message to such person), you may not copy
or deliver this message to anyone. In such case, you should destroy this message and kindly notify the
sender by reply email. Please advise immediately if you or your employer do not consent to Internet
email for messages of this kind. Opinions, conclusions and other information in this message that do not
relate to the official business of my firm shall be understood as neither given nor endorsed by it.

CONFIDENTIAL - Subject to
Protective Order

TR00229

E-FILED
Monday, 12 May, 2008  06:38:49 PM
Clerk, U.S. District Court, ILCD

## DECLARATION

I, David N. Stefko, Sr. V.P, CAO & CFO of Things Remembered, Inc., declare under penalty of perjury that I am an authorized signatory of Things Remembered, Inc.; that I am duly authorized to make the above responses on behalf of Things Remembered, Inc.; that certain of the matters stated in the foregoing responses are not within my personal knowledge and that I am informed that there is no Officer or Managing Agent of Things Remembered, Inc. who has personal knowledge of such matters; and that the facts stated in said responses have been assembled by authorized employees and counsel of Things Remembered, Inc. and I am informed that the facts stated in said responses are true and correct.

Date: _____ 12/28/07 _____

_____ David N. Stefko _____
David N. Stefko
Sr. V.P., CAO & CFO
Things Remembered, Inc.

- 19 -

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

- - -

Design Ideas, Ltd.,              )
                                 )
              Plaintiff,         )
                                 )
     vs.                         )  Case No: 3:07-CV-0377
                                 )
Things Remembered, Inc.,         )
                                 )
              Defendant.         )

- - -


        Deposition of David Stefko, a witness herein,

called by the plaintiff for cross-examination

pursuant to the Federal Rules of Civil Procedure,

taken before Constance Versagi, Notary Public in and

for the State of Ohio, at the offices of Jones, Day,

901 Lakeside Avenue, Cleveland, Ohio on Thursday,

April 24, 2008, commencing at 9:40 a.m.

                    - - -

1    Q    Your experience do other mail order companies

2         do that, web based mail order companies do

3         that?

4    A    I assume they do.

5    Q    Like Amazon.com, ever buy anything from

6         Amazon?

7    A    No.

8    Q    Barnes and Noble?

9    A    Not on line.

10   Q    Wife ever do that?

11   A    Maybe.

12   Q    You said one of your titles is Chief

13        Administrative Officer; is that right?

14   A    Yes.

15   Q    Does that mean you're in charge -- one of your

16        areas is the physical operations of your

17        headquarters?

18   A    The building you mean?

19   Q    Yes.

20   A    Yes.

21   Q    So, in other words, your area, you control the

22        janitor essentially who cleans the corporate

23        headquarters?

24   A    In theory.

25   Q    Right, through the chain.  Does Things

| | | |
|---|---|---|
| 1 | | Remembered maintain dead files or the old |
| 2 | | files of former employees? |
| 3 | A | We do. |
| 4 | Q | Has it kept the file of Miss Sutter? |
| 5 | A | I assume.  I don't know for sure. |
| 6 | Q | She was the president and CEO at the time, |
| 7 | | right? |
| 8 | A | Yes. |
| 9 | Q | If anyone they would keep her I would think at |
| 10 | | the executive level? |
| 11 | A | I assume they would have it, yes. |
| 12 | Q | Is there a formal document retention policy? |
| 13 | A | There is not a formal policy. |
| 14 | Q | Just a regular practice? |
| 15 | A | Yes. |
| 16 | Q | Has it generally been followed? |
| 17 | A | Yes. |
| 18 | Q | Has it changed at all? |
| 19 | A | No, hasn't changed, no. |
| 20 | Q | You said you didn't know if you maintained the |
| 21 | | files of Suzanne Sutter? |
| 22 | A | I don't know.  I don't know if we have or have |
| 23 | | not.  I assume we have. |
| 24 | Q | What about a buyer like Miss Bertke, would you |
| 25 | | maintain her files? |

Page 81

```
 1    A    We should, yes.

 2    Q    How come?

 3    A    Because she was an employee of the company.

 4         You need to maintain records.  Each department

 5         area of responsibility is to maintain records,

 6         their executives are supposed to know what

 7         they are supposed to retain, see it's

 8         retained.

 9    Q    Would her files be retained separately or

10         would they be merged with her department's

11         files?

12    A    Merged with all the employees.

13    Q    What do you mean all the employees?

14    A    Merged with everybody else's files.

15    Q    The people working in the department at the

16         time she left?

17    A    The company.  Whatever files they maintained,

18         Stacey Bertke's stuff would be maintained with

19         everybody else's files.

20    Q    Mr. Tejada was a higher level employee?

21    A    Vice President.

22    Q    Has Things Remembered maintained his file?

23    A    In theory they should, yes.

24    Q    Would Mr. Tejada's be merged with his

25         department or with his successor's file?
```

Page 82

```
 1    A    It would be filed with all company employee
 2         files.  Keep them all, not destroy, in theory
 3         not have -- he would be kept filed with the
 4         company.
 5    Q    Have you looked through any of these files, of
 6         these old files, for documents or material for
 7         this lawsuit?
 8    A    No.
 9    Q    Do you know if anyone has?
10    A    I don't know if anyone has, no.
11    Q    Who handles personnel generally at Things
12         Remembered?
13    A    We have a vice president of human resources.
14    Q    Who is that?
15    A    Her name is Alice Guiney.
16    Q    Alice?
17    A    Alice Guiney, G-U-I-N-E-Y.
18    Q    If there were a disciplinary matter with an
19         employee, with a merchant, would you know
20         about it, typically?
21    A    Not necessarily, but most likely I would.
22    Q    How come?
23    A    Just from the standpoint if it's a
24         disciplinary action, legal had to be involved,
25         then Chuck would inform me about it in a
```

Page 198

1   State of Ohio,              )
                                 )  SS:   CERTIFICATE
2   County of Cuyahoga.         )

3        I, Constance Versagi, Court Reporter and

4   Notary Public in and for the State of Ohio, duly

5   commissioned and qualified, do hereby certify that

6   the within named witness, David Stefko,

7   was by me first duly sworn to testify the truth, the

8   whole truth, and nothing but the truth in the cause

9   aforesaid; that the testimony then given by him was

10  by me reduced to stenotypy/computer in the presence

11  of said witness, afterward transcribed, and that the

12  foregoing is a true and correct transcript of the

13  testimony so given by him as aforesaid.

14       I do further certify that this deposition was

15  taken at the time and place in the foregoing caption

16  specified, and was completed without adjournment.

17       I do further certify that I am not a relative,

18  counsel, or attorney of either party, or otherwise

19  Interested in the event of this action.

20       IN WITNESS WHEREOF, I have hereunto set my

21  hand and affixed my seal of office at Cleveland,

22  Ohio, on this 7th day of May, 2008.

23

24       _____
         Constance Versagi, Court Reporter and
         Notary Public in and for the State of Ohio.
25       My Commission expires January 14, 2013.

Exhibit 5

3:10:bi:03077-JES-CHE    # 16-3    Page 8 of 30



FREE HAND
DRAWINGS BY JENNA







9/2  JUNE 15, 1999

**Design Ideas**
2521 Brookvard Road
...

| Client STARBUCKS | Drawing: FLOWERS | |
|---|---|---|
| Project: CRITTERS CUSTOM | View ZD | **CONFIDENTIAL** |
| Date:    Scale: | Drawn by: | **DI 000174** |









**Design Ideas**
2521 Stockyard Road
Springfield 62703
phone

| Client STARBUCKS | Drawing: FLOWERS |
| Project: CRITTERS : CUSTOM | View |
| Date: Scale. | Drawn by |

**CONFIDENTIAL**
DI 000175









**Design Ideas**
252 Stockyard Road
Springfield IL 62702

| Client: STAR BUCKS | Drawing: FLOWERS |
| Project: R_TERS : CUSTON | View: |
| Date: Scale | Drawn by |

CONFIDENTIAL
DI 000176







*Design Ideas*
950 Stockyard Road
springfield IL 62702

Client: *STARBUCKS*    Drawing: *FLOWERS*
Project: *CRITTERS CUSTOM*    View: *TOP*
Date: _____ *L SC*  Scale: *FILL*    Drawn by: *FJ MW*

CONFIDENTIAL
DI 000177



13



14

REVISED



15

Design Ideas
2521 Stockyard Road
Springfield IL 62702
phone
fax

Client STARBUCKS
Project PETTERS CUSTOM
Date        Scale

Drawing: FLOWERS
View 3?
Drawn by ENW

CONFIDENTIAL
DI 000178

# Critter Note Board
## Petals Only
For petals version use Flowers #9,1,14

not to scale



Detail

Note: Flowers are to be welded only by their centers to the wire grid that is behind them. th petals of the flowers will be used to hold notes.



| Design Ideas | Client: Design Ideas | Drawing: Petals Note Board | CONFIDENTIAL |
|---|---|---|---|
| 2521 Stockyard Road Springfield, IL 62702 phone: 217 753.3081 | Project: Big Book | View: front | DI 000179 |
| | Date: 9.8.99    Scale: none | Drawn by: Jenna | |

# Critter Note Board
## Petals Only
For petals version use Flowers #9,1,14

not to scale

1.5mm thick metal



front view

CONFIDENTIAL
DI 000180

# Critter Note Board
## Petals Only
For petals version use Flowers #9,1,14

Use same plates as on mesh bath box. See detail drawing

not to scale

7 flowers

5 flowers

weld here only

Back view

Note: Flowers are to be welded **only by their centers** to the wire grid that is behind them.  th petals of the flowers will be used to hold notes.

CONFIDENTIAL
DI 000181



Design Ideas
2521 Stockyard Road
Springfield, IL 62702
phone: 217 753 5061
fax: 217 753.5580

| Client: Design Ideas | | Drawing: Petals Note Board | |
|---|---|---|---|
| Project:   Big Book | | View: back | |
| Date: 9.8.99 | Scale:   none | Drawn by: Jenna | Dwg no.: |

Critter Note Board
**Petals Only**
For petals version use Flowers #9,1,14

not to scale



Front view

Note: Flowers are to be welded only by their centers to the wire grid that is behind them. the
petals of the flowers will be used to hold notes.

CONFIDENTIAL
DI 000182

Design Ideas
2521 Stockyard Road
Springfield, IL 62702
phone: 217.753.3081
fax: 217.753.3080

| Client: Design Ideas | Drawing: Petals Note Board | |
|---|---|---|
| Project: Big Book | View: front | |
| Date: 9.8.99 | Scale: none | Drawn by: Jenna | Dwg no.: |

Critter Desk
Accessories
**Organizer Tray**
not to scale



Sheet metal sides

Sheet metal bottom
in this section only

1MM
thick

Chrome finish

3MMØ

GRID
BOTTOM

CONFIDENTIAL
DI 000183



| *Design Ideas* | Client: Design Ideas | | Drawing: Letter Holder | |
| 2521 Stockyard Road | Project: Critter Desk Accessories | | View: perspective, | |
| Springfield, IL 62702 phone: 217 753 3081 fax: 217 753 3080 | Date: 9.1.99 | Scale: none | Drawn by: Jenna | Dwg no.: |



Critter Organizer Tray

ATTN BO DU

CONFIDENTIAL
DI 000184

| Item | | | | | | |
|---|---|---|---|---|---|---|
| Packing | | | | | | |
| Indiv box/polybag | 0.05 | | | | | |
| | | | | | | |
| Packing | | | | | | |
| Wastecan (petal) | 4.72 | 415 | | 30x30x52/4 | 63x63x55/16 | |
| Packing | 0.21 | | | | | |
| Polybag/4 nested/inner | | | | | | |
| | | | | | | |
| letter tray (petal) | 3.89 | 50 | | 43x28x36/6 | 87x57x37/24 | |
| Packing | 0.16 | | | | | |
| Indiv box/nest 2 pcs | | | | | | |
| | | | | | | |
| letter holder (petal) | 1.65 | 65 | | 24x19x16/6 | 50x59x18/36 | |
| Packing | 0.05 | | | | | |
| polybag/2 nested box | | | | | | |
| | | | | | | |
| Organizer (petal) | 2.89 | 170 | | 30x26x17.5/6 | 55x32x37/24 | |
| Packing | 0.18 | | | | | |
| Indiv box/polybag | | | | | | |
| | | | | | | |
| Tea light (petal) | 0.59 | 15 | | 130x6.5x13/6 | 54x40x27/288 | |
| Packing | 0.07 | | | | | |
| Indiv box/polybag | | | | | | |
| | | | | | | |
| 108-flower memo minder 9# | 0.52 | 125 | 3000 | 11.5x11.5x4.6/6 | 48x36.5x39/96 | tool fo |
| Packing | 0.06 | | | | | |
| Indiv box/polybag | | | | | | |
| Label/4 color card stock | 0.04 | 40 | | | | |
| 128-flower memo minder 14# | 0.52 | | | 13.5x13.5x4.6/6 | 56x41x39/96 | |

Medallion

CONFIDENTIAL
DI 000185

| Item | Product Name | FOB | Tool | Inner | Master cm | Sample | |
|------|-------------|-----|------|-------|-----------|--------|--|
| 9/21/99 | 101 pencil cup (petal) | 1.93 | ? | 26.5x9x22/6 | 56x30x46/72 | | |
| | Indiv box | | | | | | |
| | | | | | | | |
| | . | | | | | | |
| | 101 pencil cup (critter) | 1.93 | | 26.5x9x22/6 | 56x30x46/72 | | |
| | Indiv box | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | 69 pencil cup (petal) | 1.10 | | 26.5x9x16/6 | 56x30x35/72 | | |
| | Indiv box | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | 69 pencil cup (critter) | 1.10 | | 26.5x9x16/6 | 56x30x35/72 | | |
| | Indiv box | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | 33 pencil cup (petal) | 1.31 | | 26.5x30x35/ | 56.5x30x35/144 | | |
| | Indiv box | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | 33 pencil cup (critter) | 1.31 | | 26.5x30x35/ | 56.5x30x35/144 | | |
| | indiv box | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | wastecan (petal) | 5.19 | | 30x30x42/1 | 63x63x43.5/4 | | |
| | Indiv box | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | letter tray (petal) | 4.36 | | 50x41x26.5/ | 52x43x55/12 | | |
| | Indiv box | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | letter holder (petal) | 1.78 | | 37x22x14/6 | 46x39x45/36 | | |
| | Indiv box | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | Orgenizer (petal) | 3.07 | | 30x26x17.5/ | 55x32x37/24 | | |
| | Indiv box | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | Tea light (petal) | 0.66 | | 130x6.5x13/ | 54x40x27/288 | | |
| | Indiv box | | | | | | |
| | | | | | | | |

CONFIDENTIAL
DI 000186

Critter Desk
Accessories
**Small Doodad Cup**
not to scale



Top View



84mm
outside diameter

80mm
inside diameter

2mm diameter

Same metal
bottom as new
stackable mesh
pencil cup.
CHROME
COATED.

33mm

78mm

84mm

3.3 x 1.3



Design Ideas
2521 Stockyard Road
Springfield, IL 62702
phone: 217.753.5081
fax: 217.753.3080

| Client: Design Ideas | | Drawing: Small Doodad Cup |
|---|---|---|
| Project: Critter Desk Accessories | | View: perspective, top |
| Date: 9.1.99 | Scale: none | Drawn by: Jenna | Dwg |

CONFIDENTIAL
DI 000187



Doodles
DeskMates small
doodad cup

**not to scale**

**stainless steel**

petals only

**Top View**

Use no more than 10
flowers. Edges of all
flowers must be touching
and welded together

**3**mm diameter

84mm
outside diameter

80mm
inside diameter

Same metal
bottom as new
stackable mesh
pencil cup.
Stainless steel

33mm

8mm

78mm

84mm

*Design Ideas*
2521 Stockyard Road
Springfield, IL 62702
phone: 217 753.3081
fax: 217.753.3080

| | | | | |
|---|---|---|---|---|
| *Client*: Design Ideas | | | *Drawing*: Small Doodad Cup | |
| *Project*: Critter Desk Accessories | | | *View*: perspective, top | |
| *Date*: 9.15.99 | *Scale*: none | | *Drawn by*: Jenna | *Dwg no.* |

CONFIDENTIAL
DI 000188

Critter Desk
Accessories
**Large Doodad Cup**
not to scale



Top View



84mm
outside diameter

80mm
inside diameter

2mm diameter

Same metal
bottom as new
stackable mesh
pencil cup.
CHROME
COATED.

69mm

8mm

78mm

84mm

3.3 x 2.7



Design Ideas
2521 Stockyard Road
Springfield, IL 62702
phone: 217.753.8081
fax: 217.753.8066

| Client: Design Ideas | | Drawing: Large Doodad Cup | |
|---|---|---|---|
| Project: Critter Desk Accessories | | View: perspective, top | |
| Date: 9.1.99 | Scale: none | Drawn by: Jenna | |

CONFIDENTIAL
DI 000189

**Design Ideas** ™ P.o. Box 2967   Springfield, IL 62708   Phone 217 753-3081   FAX 217 753- 3080   800426-6394

Packing instruction for
Doodles DeskMates Small dooodad
cup



two color
hang tag

polybag

box

Indiv. box

inner carton

6 inner cartons per master (36 peices)

CONFIDENTIAL
DI 000190

| Code | Description | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DCD90930 | 14# Flower Thumb Tacks(stainless steel) | | | | | | | |
| DCD90940 | 9# Flower Thumb Tacks(stainless steel) | | | | | | | |
| DCD91210 | Letter Holder-Vine Style(stainless steel) | 2.882 | 65 | 1000 | 58.5x9.5x21.5/6 | 60x19.5x44.5/24 | 2.3.6 x 7.7 x 17.5 | 0.0764 |
| DI | individual dimensions | 0.123 | | | 19x7.5x20/2 | | | |
| | packing cost | 0.013 | | | | | | |
| | Poly bag | 0.031 | | | | | | |
| | Hang tag | | | | | | | |
| | Total | 3.048 | 92 | | | | | |
| DCD91220 | Wastecan(stainless steel) | 6.767 | 565 | 1000 | 28x28x48/4 | 52.5x37.5x50/16 | 22.7 x 22.7 x 19.7 | 0.3472 |
| DI | packing cost | 0.201 | | | | | | |
| | poly bag | 0.050 | | | | | | |
| | hang tag | 0.060 | | | | | | |
| | Total | 7.048 | | | | | | |
| DCD91230 | Letter Tray-Vine Style(stainless steel) | 6.704 | 100 | 1000 | 34x27x37.5/4 | 55.5x35.5x76.5/16 | 21.8 x 13.9 x 30.1 | 0.335 |
| | packing cost | 0.188 | | | | | | |
| | poly bag | 0.025 | | | | | | |
| | hang tag | 0.03 | | | | | | |
| | Total | 6.947 | 130 | | | | | |
| DCD91240 | Bookends (stainless)/pair | 2.707 | 250 | 1000 | 52.5x13x16/6pairs | 54x27.5x33.5/24pairs | 21.3 x 10.8 x 13.2 | 0.0732 |
| | packing cost | 0.060 | | | | | | |
| | poly bag | 0.013 | | | | | | |
| | two color card/pair | | | | | | | |
| | Total | 2.829 | 280 | | | | | |
| DCD91250 | Donud cup small-stainless | 1.629 | 190 | 1000 | 28.5x19.5x6/6 | 40.5x30x20.16 | 15.9 x 11.8 x 7.9 | 0.0239 |
| | Indiv. Box size | 0.075 | | | 9x9x4.5.1 | | | |
| | Packing cost | 0.005 | | | | | | |
| | poly bag | 0.03 | | | | | | |
| | hang tag | | | | | | | |
| | Total | 1.739 | 220 | | | | | |
| DCD91260 | Pencil Cup-stainless | 1.504 | 190 | 1000 | 28.5x19.5x12.5/6 | 41.5x30x39.5/36 | 16.3 x 11.8 x 15.6 | 0.0483 |
| | individual dimensions | | | | | | | |
| | packing cost | 0.094 | | | 9x9x11/1 | | | |

CONFIDENTIAL
DI 000191

| | | | 300pcs | 34x27x37.5/4 | 55.5x35.5x76.5/16 |
|---|---|---|---|---|---|
| Letter Tray (Basket) - custom flutter | | | | | |
| *Price increase adjustment* | 7.96 | 190 | | | |
| packing cost | 0.19 | | | | |
| poly bag | 0.03 | | | | |
| hang tag | 0.03 | 30 | | | |
| Total | 8.21 | | | | |
| | | | | | |
| Bookends | | | | 1500 52.5x13x16/6pairs | 54x27.5x33.5/24pairs |
| *Price increase adjustment* | 2.96 | 250 | | | (Sheet metal bottom thickness 0.6mm - 3/30) |
| packing cost | 0.06 | | | | |
| poly bag | 0.02 | | | | |
| two colour card | 0.044 | | | | |
| hang tag | 0.05 | 30 | | | |
| Total | 3.134 | | | | |
| | | | | | |
| Bookends - custom flutter | 3.19 | 65 | | 52.5x13x16/6pairs | 54x27.5x33.5/24pairs |
| packing cost | 0.06 | | | | |
| poly bag | 0.02 | | | | |
| two colour card | 0.044 | | | | |
| hang tag | 0.05 | 30 | | | |
| Total | 3.364 | | | | |
| | | | | | |
| Doodad cup small - 8 flower | | | | 1500 28.5x19.5x6/6 | 40.5x30x20/36 |
| *Price increase adjustment* | 1.7c | | | | |
| individual dimensions | | | | 9x9x4.5/1 | |
| packing cost | 0.08 | | | | |
| poly bag | 0.01 | | | | |
| hang tag | 0.03 | 30 | | | |
| Total | 1.88 | | | | |
| | | | | | |
| Doodad cup small -8 flower - custom flutter | 2.06 | 190 | | 1500 28.5x19.5x6/6 | 40.5x30x20/36 |
| individual dimensions | | | | 9x9x4.5/1 | |
| packing cost | 0.08 | | | | |
| poly bag | 0.01 | | | | |
| hang tag | 0.03 | 30 | | | |
| Total | 2.18 | | | | |
| | | | | | |
| Pencil cup | | | | 1500 28.5x19.5x12.5/6 | 41.5 30x35.5 36 |
| *Price increase adjustment* | 1.5c | | | | (Outside bottom need impressed by 1.5mm approved 3/30) |
| individual dimensions | | | | 9x9x11/1 | |
| packing cost | 0.01 | | | | |
| poly bag | 0.03 | | | | |
| Total | 1.77 | | | | |
| | | | | | |
| Pencil Cup - custom flutter | | | | 1500pcs 123.5x19.5x12.5/6 | 41.5x30x35 5.36 |
| *Price increase adjustment* | 1.5c | | | | |
| individual dimensions | | | | 9x9x11/1 | |
| packing cost | 0.1 | | | | |
| poly bag | 0.01 | | | | |

CONFIDENTIAL
DI 000192

Critter Desk
Accessories
**Pencil Cup**
not to scale



8



2mm diameter

84mm
outside diameter

80mm
inside diameter

101mm

Same metal
bottom as new
stackable mesh
pencil cup.
CHROME
COATED.

8mm

78mm

84mm

3.5 x y



Design Ideas
2521 Stockyard Road
Springfield, IL 62702
phone 217 753 3081
fax 217 753 3080

| Client: Design Ideas | Drawing: Pencil Cup |
|---|---|
| Project: Critter Desk Accessories | View: perspective, top |
| Date: 9.1.99 | Scale: none | Drawn by: |

**CONFIDENTIAL**
DI 000193

Critter Desk
Accessories
**Pencil Cup**
not to scale



New Revision1:
Use 6 critters
only
for both styles



84mm
outside diameter

80mm
inside diameter

2mm diameter

101mm

Same metal
bottom as new
stackable mesh
pencil cup.
CHROME
COATED.

8mm

78mm

84mm



| | | |
|---|---|---|
| *Design Ideas* 2521 Stockyard Road Springfield, IL 62702 phone: 217 753 3081 fax: 217 753 3090 | *Client:* Design Ideas | *Drawing:* Pencil Cup |
| | *Project:* Critter Desk Accessories | *View:* perspective, top |
| | *Date:* 9.1.99    *Scale:* none | *Drawn by:* |

CONFIDENTIAL
DI 000194

Doodles
DeskMates pencil
cup

not to scale

**stainless steel**



**Use 6 Petals only.
2 of flower 1
2 of flower 9
2 of flower 14**



84mm
outside diameter

80mm
inside diameter

3mm diameter

101mm

Same metal
bottom as new
stackable mesh
pencil cup:
STAINLESS
STEEL.

8mm

78mm

84mm



| Design Ideas | Client: Design Ideas | Drawing: Pencil Cup | |
|---|---|---|---|
| 2521 Stockyard Road | Project:  Doodles DeskMates | View: perspective, top | CONFIDENTIAL |
| Springfield, IL  62702 phone: 217 753 5031 fax: 217.753.3080 | Date: 11.15.99     Scale:   none | Drawn by: | DI 000195 |

*Design Ideas* ™ P.o. Box 2967   Springfield, IL 62708   Phone 217 753-3081   FAX 217 753-3080   800426-6394

Packing instruction for
Doodles DeskMates Petals
pencil cup



6 inner cartons per master (36 peices)

CONFIDENTIAL
DI 000196

**E-FILED**
Monday, 12 May, 2008 06:39:16 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DESIGN IDEAS, LTD., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 3:07-cv-03077 |
| | ) |
| THINGS REMEMBERED INC., | ) |
| | ) |
| | ) |
| Defendant. | ) |

## **PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff

through counsel, hereby propounds the following interrogatories to Defendant, Plaintiff

Counterclaimant to be answered fully and separately in writing and under oath within the

time period permitted by Rule 33 after service hereof or at a time to be determined by the

Court.

## **DEFINITIONS AND INSTRUCTIONS**

1.     Defendant means (a) Things Remembered Inc., its predecessor corporations,

successor corporations, each subsidiary corporation, affiliated or related companies, and

divisions; (b) each of its consultants, accountants, attorneys and independent contractors

which have contractual relations with it; and (c) any person acting or purporting to act or,

at the time of the stated subject matter, was acting or purporting to act for or on behalf of

it or anyone under its  control, direction or instruction.

2.     Flower Candle Basket means the decorative container made of metal wires and

other metal components, including heart shaped wires connected to each other by straight

wire supports with flower shaped wire figures between certain of the straight wire supports, that was offered by defendant and sometimes known by Model No. 518550.

3.     Flower Sculptures means the three flower wire sculptures created by Design Ideas and depicted in paragraph 9 of the Complaint (Document 1) and any objects containing them or any of them, e.g., the votive cups depicted in paragraph 9 of the Complaint or the fruit basket depicted in paragraph 10 of the Complaint.

4.     Document in either the singular or plural form, shall be construed in its broadest sense and shall include, but is not limited to all written, printed, typed, recorded, graphic, stenographic, computer generated, computer stored, and electronically stored matter of every kind and description.

5.     If any document responsive to an interrogatory was at one time in existence, but has been lost, discarded, destroyed. or is otherwise presently unavailable, identify such document as completely as possible, providing as much of the following information as possible:

   a. the type of document;

   b. its date;

   c. the date or approximate date it was lost, discarded, destroyed or otherwise
      became unavailable;

   d. the reason or reasons for disposing of the document if discarded or destroyed;

   e. the circumstances and manner in which it was lost, discarded, destroyed or
      otherwise became unavailable;

   f. the identity of all persons authorizing or having knowledge of the circumstances
      surrounding the disposal of the documents;

2

g. the identity of all persons who lost, discarded, destroyed or otherwise caused the unavailability of the document; and

h. the interrogatory to which such document is responsive.

6. The word "identify" or "identity" when used with respect to an individual means such individual's (a) full name, present or last known address, business address(es)and telephone number(s); (b) present or last known employer's place of business and job title, if any; and (c) the nature ( including job title , if any) and dates of affiliation, by employment or otherwise with any party to this litigation.

7. The word "identify or "identity" when used with respect to an entity other than an individual means (a) its name; (b) its nature (e.g. corporation, partnership, etc.); (c) the location of its principal place of business; and (d) the persons employed by such entity with whom defendant has dealt with respect to the subject matter of the interrogatory.

8. "Relating to" includes pertaining to, referring to or having as its subject matter, directly or indirectly, expressly or impliedly the subject matter of the specific interrogatory.

9. "Person" means the plural as well as the singular and includes any natural person and any firm' corporation, association or partnership or other form of legal entity.

10. For the purposes of these interrogatories, all words, phrases and sentences are to be construed in a reasonable manner.

11. These interrogatories are continuing in nature and encompass all information that is in the possession, custody or control of defendant at the present time or that comes into the possession, custody or control of defendant at any time while the present legal action is pending.

3

12.    If any answer responsive to these Interrogatories is withheld under any claim of

privilege or confidentiality, defendant shall provide a list which identifies the subject

matter for which privilege or confidentiality is claimed, including at least the following

information:

   a. nature and date of the subject matter;

   b. author;

   c. the person or persons to whom the subject matter was conveyed, either orally or

      in writing together with the person(s) job title or position;

   d. the basis upon which the privilege is claimed; and

   e. the interrogatory to which each claim of privilege responds.

## INTERRROGATORIES

1.    Identify all patent, trademark or copyright infringement litigations and arbitrations
in which defendant was or is a party.

2.    Identify all witnesses with information concerning defendant's creation, design,
manufacture, marketing, advertisement, promotion, distribution or sale of the Flower
Candle Basket.

3.    State the date on which defendant first formulated or created the idea for the
Flower Candle Basket.

4.    Describe in detail the preparation, formulation and completion of all stages,
models, prototypes, revisions, drafts and versions of the Flower Candle Basket, including
for each such draft or version the inclusive dates of execution of the draft or version, each
and every medium used, the name, address and occupation of each person who
participated in or was aware of or involved in the draft or version and the location and
custodian of all documents relating to the draft or version.

5.    Identify each source consulted by defendant in the formulation and creation of the
Flower Candle Basket, including for each such source the nature of the source, the date
upon which the source was first consulted by defendant and a description of the manner
in which the source was consulted by the defendant.

6.    If defendant was aware of plaintiff's Flower Sculptures or any objects containing
same or any of them prior to the formulation of the Flower Candle Basket, state the date

4

when defendant first became aware of same and the manner in which the defendant became aware of same.

7. If any agent, employee or assistant of, or contractor to, defendant had any awareness of the existence of the Flower Sculptures or any objects containing same or any of them prior to the formulation of the Flower Candle Basket, identify each such person, state the date on which the person first became aware of same, the date on which defendant first had knowledge of the person's awareness of plaintiff's work and a description of the manner in which the person first became aware of same.

8. If defendant ever had access to, or possession of, all or any part of the Flower Sculptures or any objects containing same or any of them, state each date when the defendant had access to or possession of same, a full and complete description of the manner in which defendant gained access to or possession of same and the location and the name and address of the custodian of all records relating to defendant's access to or possession of same.

9. If any employee, agent or associate of, or contractor to, defendant ever had access to, or possession of an original or a copy of the Flower Sculptures or any objects containing same or any of them, identify each such person, state the person's relationship to the defendant, the date on which the person had first access to or possession of same, the date on which defendant first became aware of such person's access to or possession of same, and a description of the manner in which such person had access to or possession of same.

10. Identify all persons knowledgeable concerning the volume of sales of the Flower Candle Basket, the gross revenues from the engraving services rendered upon same and the identity of the customers of the Flower Candle Basket.

11. Identify all persons knowledgeable concerning the costs in the manufacture and sales of the Flower Candle Basket and from the engraving services rendered upon same.

12. On what date did defendant cease selling Flower Candle Baskets?

13. Provide the transaction date, price, unit quantity and identify the purchaser for each sale of a Flower Candle Basket.

14. Provide the transaction date, price, unit quantity and identify the purchaser for each sale of a Flower Candle Basket by defendant.

15. Provide the transaction date, price, unit quantity and identify the seller for each sale of a Flower Candle Basket to defendant.

16. State the number of returns of Flower Candle Baskets.

5

17.     State separately the gross revenues derived by defendant from (a) its manufacture, distribution and sale of Flower Candle Baskets and from (b) the engraving services it rendered onto same.

18.     Identify separately all costs or other deductions from (a) the gross revenues derived by defendant from its manufacture, distribution and sale of Flower Candle Baskets and from (b) the engraving services it rendered onto same.

19.     State all facts in support of defendant's denial at paragraph 9 of its Answer (Document 7) that there is any originality in the Flower Sculptures.

20.     State all facts in support of defendant's denial at paragraph 10 of its Answer (Document 7) that there is any creativity or originality in the Flower Sculptures.

21.     State all facts in support of defendant's affirmative defenses set forth in paragraphs 1 through 8 of the Affirmative Defenses section of its Answer (Document 7).

Respectfully submitted,

**DESIGN IDEAS, LTD.,**

by its attorneys,

**SAIDMAN DesignLaw Group**

Dated:    October 15, 2007          By:

Michael T. Platt
Garfield Goodrum
8601 Georgia Avenue
Silver Spring, MD 20910
(301) 585-8601
fax: (301) 585-0138
garfield.goodrum@designlawgroup.com
Attorney Goodrum is admitted in MA, and not yet admitted in MD.

## CERTIFICATE OF SERVICE

I certify that on October 15, 2007, a copy of the above and foregoing Plaintiff's First Set Of Interrogatories To Defendant was caused to be served on opposing counsel of record by U.S. Mail, Postage Prepaid, properly addressed.

R. Effie Hale

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| DESIGN IDEAS, LTD., | ) |
| | ) Case No. 07-CV-03077 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THINGS REMEMBERED, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S RESPONSES TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

Defendant, Things Remembered, Inc. ("Things Remembered") hereby submits its

responses to Plaintiff's First Set of Interrogatories to Defendant, served by plaintiff, Design

Ideas, Ltd. ("Design Ideas"), subject to the general and specific objections set forth below.

## GENERAL OBJECTIONS

The following General Objections apply to and are incorporated into each of Things

Remembered's responses to each of Design Ideas' individual interrogatories as set forth herein.

Things Remembered's responses to each of Design Ideas' interrogatories are made without

waiver of the following General Objections.

1.     Things Remembered objects to each interrogatory to the extent it seeks

information protected from discovery by the attorney-client privilege, the work product doctrine,

and/or any other applicable privilege or immunity. Nothing contained in these objections and

responses is intended to be, or in any way constitutes, a waiver of any applicable privilege,

immunity, or doctrine. Things Remembered also objects to the identification and logging of

privileged documents generated after the filing of this action, as the volume of documents would render such logging unduly burdensome.

2.    Things Remembered objects to each interrogatory, definition, and/or instruction to the extent that it seeks to impose requirements or obligations upon Things Remembered different from or in addition to those imposed by the Federal Rules of Civil Procedure and/or the Local Rules for the Central District of Illinois.  While Things Remembered may choose to use Design Ideas' definitions and instructions as a guide, Things Remembered does not concede or stipulate to their validity or appropriate usage in these proceedings.  Things Remembered will respond to non-objectionable interrogatories in good faith and in a reasonable way, and will satisfy its obligations under the Federal Rules and the Local Rules.

3.    Things Remembered objects to each interrogatory to the extent it calls for legal conclusions.

4.    Things Remembered objects to each interrogatory to the extent that it seeks information that is not in Things Remembered's possession, custody, or control.

5.    Things Remembered objects to Design Ideas' interrogatories to the extent they seek information that is already in Design Ideas' possession, publicly available, and/or available from other sources that are more convenient, less burdensome, and/or less expensive to Things Remembered.

6.    Things Remembered objects to the phrasing of the interrogatories to the extent that the terms used therein have legal significance to the allegations of the Complaint.  Nothing in these, or any other responses to Design Ideas' discovery, can be taken as an admission that Things Remembered agrees with Design Ideas' use or interpretation of the relevant terms.

-2-

7.      Things Remembered objects to Design Ideas' definition of "Defendant" to the extent it purports to include "any person acting or purporting to act or, at the time of the stated subject matter, was acting or purporting to act for or on behalf of [Things Remembered] or anyone under its control or instruction" as overly broad and vague, thereby rendering the interrogatories unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

8.      Any objection or lack of objection to an interrogatory is not to be deemed an admission by Things Remembered that such information exists or that Things Remembered possesses information called for in the interrogatory.

9.      Things Remembered's investigation of matters relevant to these interrogatories is ongoing. Things Remembered accordingly reserves the right to supplement its responses. Things Remembered also reserves the right to supplement its responses up to and including the time of trial in the event that it discovers additional documents and/or information responsive to Design Ideas' interrogatories, and further reserves the right to supplement any objections based on newly discovered documents, information, and/or positions taken by Design Ideas as to the scope of the interrogatories.

## SPECIFIC OBJECTIONS AND RESPONSES

1. Identify all patent, trademark or copyright infringement litigations and arbitrations in which defendant was or is a party.

### Response:

Things Remembered objects to this interrogatory as overly broad, unduly burdensome,

harassing, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving this objection and the General Objections set forth above,

Things Remembered states that, within the past five years, it was a party to the following

proceeding:

*Design Ideas, Ltd. v. Things Remembered, Inc.,* Case No. 07-CV-03077 (C.D. Ill.)

2. Identify all witnesses with information concerning defendant's creation, design, manufacture, marketing, advertisement, promotion, distribution or sale of the Flower Candle Basket.

### Response:

Things Remembered objects to this interrogatory as vague, ambiguous, overly broad,

unduly burdensome, and harassing in requiring identification of "all witnesses" without defining

what is intended by that term. The term might be intended to cover any person, anywhere in the

world, who possesses any information regarding any sample of the accused product from the

conception by its unknown creator, to any person who entered a Things Remembered retail store

where the sample was on sale, to the recipient of the sample as a gift from the consumer who

purchased it. Alternatively, the term might be limited to persons who are expected to be called as

witnesses at a deposition or at trial. Things Remembered also objects to this interrogatory as

- 4 -

being based in part on false presumptions, as Things Remembered did not create, design, or

manufacture the accused product.

Subject to and without waiving these objections and the General Objections set forth

above, Things Remembered identifies the following current and former Things Remembered

employees who had responsibilities for the marketing, advertisement, promotion, distribution

and/or sale of the Flower Candle Basket:

Stacy Bertke
Former Merchandise Manager, Things Remembered, Inc.
6411 Clearair Drive
Mentor, OH 44060
American Greetings Corporation
One American Road
Cleveland, OH 44144
216-252-7300

Ellen Frank
Director of Merchandising
Things Remembered, Inc.
5500 Avion Park Drive
Highland Heights, OH 44143
440-473-2000

Nelson Tejada
Former Vice President, General Merchandising Manager, Things Remembered, Inc.
155 Chadwick Dr.
Aurora, OH 44202
American Greetings Corporation
One American Road
Cleveland, OH 44144
216-252-7300

Suzanne Sutter
Former President, Things Remembered, Inc.
3432 Courtland Road
Pepper Pike, OH 44122
216-591-1159

3. State the date on which defendant first formulated or created the idea for the Flower Candle Basket.

## Response:

Things Remembered objects to this interrogatory as vague and ambiguous in its reference

to "the idea for the Flower Candle Basket."

Subject to and without waiving this objection and the General Objections set forth above,

Things Remembered responds as follows:

Things Remembered believes the general concept for a wire candle basket with flower

motifs and an integrated engraving plaque was first raised by Stacy Bertke, Things

Remembered's former Merchandise Manager, prior to or on a buying trip to Taiwan that

occurred in September 2001. The formulation and creation of the actual Flower Candle Basket

was not done by Things Remembered.

4. Describe in detail the preparation, formulation and completion of all stages, models, prototypes, revisions, drafts and versions of the Flower Candle Basket, including for each such draft or version the inclusive dates of execution of the draft or version, each and every medium used, the name, address and occupation of each person who participated in or was aware of or involved in the draft or version and the location and custodian of all documents relating to the draft or version.

## Response:

Things Remembered objects to this interrogatory as overly broad, unduly burdensome,

and harassing in its requirement of detailed descriptions of activities that primarily took place

apart from Things Remembered.

Subject to and without waiving this objection and the General Objections set forth above,

Things Remembered responds as follows:

-6-

On or before a buying trip to Taiwan that occurred in September 2001, Stacy Bertke, Things Remembered's former Merchandise Manager, advised a representative of Libra Pacific Co. Ltd. ("Libra"), a Taiwanese trading company, that Things Remembered was interested in obtaining a wire candle basket having flower motifs and an integrated engraving plate. This communication was delivered either directly to the Libra representative or through Christina Sun, a Taiwanese representative of Associated Merchandising Corporation ("AMC"), 500 Seventh Avenue, New York, NY 10018. Libra was shown images of a heart-shaped flower candle box previously sold by Things Remembered. This prior product, Model No. 496957, was fabricated from wire mesh with heavier wire forming swirls and had an engraving plate on a hang tag.

A sample of what ultimately became the Flower Candle Basket was produced by or on behalf of Libra and was provided to Things Remembered for review. Things Remembered approved the sample, and the Flower Candle Basket was manufactured for Things Remembered by Tasia International Company Limited of China. Things Remembered has no knowledge of whether any "drafts" of the Flower Candle Basket were prepared.

5. Identify each source consulted by defendant in the formulation and creation of the Flower Candle Basket, including for each such source the nature of the source, the date upon which the source was first consulted by defendant and a description of the manner in which the source was consulted by the defendant.

**Response:**

Things Remembered objects to this interrogatory as vague and ambiguous in its reference to a "source" "consulted" by defendant.

Subject to and without waiving this objection and the General Objections set forth above, Things Remembered responds as follows:

- 7 -

## CERTIFICATE OF SERVICE

I hereby certify that on January $\underline{3}$, 2008, I mailed copies of the foregoing DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES by First Class Mail, postage prepaid, to the following attorneys for plaintiff:

Paul Bown
BROWN, HAY & STEPHENS, LLP
205 South Fifth Street
Suite 700
Springfield, IL 62701

Michael R. Platt
Garfield Goodrum
SAIDMAN DESIGN LAW GROUP
8601 Georgia Avenue
Silver Spring, MD 20910

Philip J. Moy Jr.
FAY SHARPE LLP
1100 Superior Avenue
Seventh Floor
Cleveland, OH 44114-2579
Telephone: 216-861-5582
Facsimile: 216-241-1666

Exhibit I
3:07-cv-03077-JES-CHE   # 16-4   Page 15 of 18

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

- - -

Design Ideas, Ltd.,          )
                             )
             Plaintiff,      )
                             )
     vs.                     )   Case No. 3:07-cv-03077
                             )
Things Remembered, Inc.,     )
                             )
             Defendant.      )

- - -


        Deposition of Ellen Frank, a witness

herein, called by the plaintiff for

cross-examination pursuant to the Federal Rules of

Civil Procedure, taken before Karen A. Toth,

Registered Professional Reporter and Notary Public

in and for the State of Ohio, at Jones, Day,

North Point Building, 901 Lakeside Avenue,

Cleveland, Ohio 44114, on Wednesday, April 23, 2008,

commencing at 9:32 a.m.

- - -

Page 110

```
 1            Well, if you discover any new or if you can
 2            supplement that, that would be great.
 3    Q    On Page TR270, Ms. Frank.
 4    A    Okay.
 5    Q    In the upper left-hand corner, the heart
 6            candle gift set, do you see any flowers
 7            depicted on that?
 8    A    No.
 9    Q    Okay.
10                MR. MOY:            Off the record.
11                (Discussion off the record.)
12                MR. MOY:            Back on the record.
13                MR. GOODRUM:      Well, let's mark this
14            as Frank 1, please.  This is Defendant's
15            responses to Plaintiff's first set of
16            interrogatories.  This particular copy is 18
17            pages.  Page 18 is signed by Mr. Moy.  It
18            doesn't have the certification of service,
19            Page 19, but just so we're clear, the typo I
20            think you're referring to counsel is -- well
21            here.
22                MR. MOY:            Reference to a wire
23            mesh flower candle basket.  I believe that was
24            intended to read a wire mesh heart shaped
25            candle basket.
```

Page 111

1                    MR. GOODRUM:      I'm talking about on

2          Page 7, the first full -- page 7, the first

3          full paragraph.  The penultimate sentence of

4          that paragraph reads, "Libra was shown images

5          of a heart shaped flower candle box previously

6          sold by Things Remembered."  And, I mean,

7          this --

8                    MR. MOY:          And I am advising you

9          that the inclusion of the word "flower" in

10         that sentence was an error.

11                   MR. GOODRUM:      Was an error.  Okay.

12                   MR. MOY:          As far as I

13         understand.

14                   Counsel, that's the reason I asked the

15         question is when you -- I don't recall the

16         response referring to the 97 -- 957 product as

17         having -- as having flowers.

18                   MR. GOODRUM:      Please bear with me

19         on my photocopying, counsel.

20                   Page 19 of this document is actually

21         the declaration signed by Mr. Stefko.  And I

22         think Page 20 is the certification of service.

23                   So I just want to be clear.

24    Q    So, Ms. Frank, do you recall there being a

25         heart shaped flower candle box previously sold

```
 1   State of Ohio,           )
                              ) SS:   CERTIFICATE
 2   County of Cuyahoga,      )

 3        I, Karen A. Toth, RPR and Notary Public in and

 4   for the State of Ohio, duly commissioned and

 5   qualified, do hereby certify that the within named

 6   witness, Ellen Frank, was by me first duly sworn to

 7   testify the truth, the whole truth, and nothing but

 8   the truth in the cause aforesaid; that the testimony

 9   then given by her was by me reduced to

10   stenotypy/computer in the presence of said witness,

11   afterward transcribed, and that the foregoing is a

12   true and correct transcript of the testimony so

13   given by her as aforesaid.

14        I do further certify that this deposition was

15   taken at the time and place in the foregoing caption

16   specified, and was completed without adjournment.

17        I do further certify that I am not a relative,

18   counsel, or attorney of either party, or otherwise

19   interested in the event of this action.

20        IN WITNESS WHEREOF, I have hereunto set my

21   hand and affixed my seal of office at Cleveland,

22   Ohio, on this 29th day of April, 2008.

23

24        _____
          Karen A. Toth, RPR and Notary Public
          in and for the State of Ohio.
25        My Commission expires May 6, 2013.
```



Protecting Ideas Since 1884

1100 Superior Avenue

Seventh Floor

April 24, 2008

Cleveland, Ohio 44114-2579

Michael T. Platt, Esq.
Garfield Goodrum, Esq.
Saidman Design Law Group
Lee Plaza, Suite 603
8601 Georgia Avenue
Silver Spring, Maryland 20910

**RECEIVED**

APR 2 8 2008

SAIDMAN
DESIGN LAW GROUP

Telephone: 216.861.5582

Fax: 216.241.1666

www.faysharpe.com

Re:     *Design Ideas, Ltd. v. Things Remembered, Inc.*
        Case No. 3:07-CV-03077-JES-CHE (Central District of Illinois)
        Your Ref. No.: 1377.261
        Our Ref. No.: COLZ 7 00403

Dear Mike and Garfield:

We enclose a service copy of Things Remembered's amended response to Design Ideas'
Interrogatory No. 4.

Very truly yours,

FAY SHARPE LLP

Philip J. Moy Jr.

PJM/
Enclosures
cc:     Paul Bown, Esq. (w/encl.)
        Carl R. Draper, Esq. (w/encl.)
        Charles J. Ibold, Esq. (w/encl.)

## IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| DESIGN IDEAS, LTD., | ) |
| | ) Case No. 07-CV-03077 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THINGS REMEMBERED, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S AMENDED RESPONSE TO INTERROGATORY NO. 4
## OF PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant, Things Remembered, Inc. ("Things Remembered") hereby submits its

amended response to Interrogatory No. 4 of Plaintiff's First Set of Interrogatories to Defendant,

served by plaintiff, Design Ideas, Ltd. ("Design Ideas"), subject to the general and specific

objections set forth below.

4.    Describe in detail the preparation, formulation and completion of all stages,
models, prototypes, revisions, drafts and versions of the Flower Candle Basket, including for
each such draft or version the inclusive dates of execution of the draft or version, each and every
medium used, the name, address and occupation of each person who participated in or was aware
of or involved in the draft or version and the location and custodian of all documents relating to
the draft or version.

### Amended Response:

Things Remembered objects to this interrogatory as overly broad, unduly burdensome,

and harassing in its requirement of detailed descriptions of activities that primarily took place

apart from Things Remembered.

Subject to and without waiving this objection and the General Objections set forth in Defendant's Responses to Plaintiff's First Set of Interrogatories, Things Remembered responds as follows:

On or before a buying trip to Taiwan that occurred in September 2001, Stacy Bertke, Things Remembered's former Merchandise Manager, advised a representative of Libra Pacific Co. Ltd. ("Libra"), a Taiwanese trading company, that Things Remembered was interested in obtaining a wire candle basket having flower motifs and an integrated engraving plate. This communication was delivered either directly to the Libra representative or through Christina Sun, a Taiwanese representative of Associated Merchandising Corporation ("AMC"), 500 Seventh Avenue, New York, NY 10018. Libra was shown images of a heart-shaped candle box (FLOWER) previously sold by Things Remembered. This prior product, Model No. 496957, was fabricated from wire mesh with heavier wire forming swirls and had an engraving plate on a hang tag. It is shown in documents produced by Things Remembered numbered TR00143 and TR00270

A sample of what ultimately became the Flower Candle Basket was produced by or on behalf of Libra and was provided to Things Remembered for review. Things Remembered approved the sample, and the Flower Candle Basket was manufactured for Things Remembered by Tasia International Company Limited of China. Things Remembered has no knowledge of whether any "drafts" of the Flower Candle Basket were prepared.

- 2 -

AS TO THE OBJECTIONS:

Respectfully submitted,

Dated: April 24, 2008

Philip J. Moy Jr.
Richard J. Minnich
John S. Zanghi
FAY SHARPE LLP
1100 Superior Avenue
Seventh Floor
Cleveland, OH 44114-2579
Telephone: 216-861-5582
Facsimile: 216-241-1666

Carl R. Draper
Bar No. 3128847
FELDMAN, WASSER, DRAPER & BENSON
1307 South Seventh Street
Springfield, IL 62703
Telephone: 217-544-3403
Facsimile: 217-544-1593
Email: cdraper@feldwass.com

Attorneys for Defendant
THINGS REMEMBERED, INC.

- 3 -

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

- - -

Design Ideas, Ltd.,          )
                             )
              Plaintiff,     )
                             )
       vs.                   )   Case No. 3:07-cv-03077
                             )
Things Remembered, Inc.,     )
                             )
              Defendant.     )

- - -


        Deposition of Stacey Bertke, a witness
herein, called by the plaintiff for
cross-examination pursuant to the Federal Rules of
Civil Procedure, taken before Karen A. Toth,
Registered Professional Reporter and Notary Public
in and for the State of Ohio at American Greetings
Corporation, 1 American Way, Brooklyn, Ohio 44144,
on Monday, April 21, 2008, commencing at 10:10 a.m.

- - -

Page 40

| | | |
|---|---|---|
| 1 | A | I do remember they did a drawing. |
| 2 | Q | How many -- did they do multiple drawings? |
| 3 | A | I remember -- I do remember that there was a |
| 4 | | question about the sizing and we went back and |
| 5 | | just told them what was the overall size of |
| 6 | | the original boxes we had, to make sure that |
| 7 | | it would be big enough to hold the eight |
| 8 | | votive candles. |
| 9 | Q | Would you look at the drawings for any other |
| 10 | | reasons? |
| 11 | A | We would just look to see, like do I like it, |
| 12 | | do I not like it.  But particular reasons, not |
| 13 | | -- no. |
| 14 | Q | Do you recall -- do you recall looking at the |
| 15 | | drawings for this -- for the heart flower -- |
| 16 | | for the flower candle basket? |
| 17 | A | I remember there being some sort of problem |
| 18 | | with the size of it and that would have been |
| 19 | | at the drawing phase, but that's all I really |
| 20 | | remember.  I do remember us talking about that |
| 21 | | it needed to be large enough to hold eight |
| 22 | | candles. |
| 23 | Q | Do you remember any conversation at the |
| 24 | | drawing phase or any discussion about the |
| 25 | | flowers that were being depicted? |

Page 41

| | | |
|---|---|---|
| 1 | A | No.  I just remember that we had -- when we |
| 2 | | walked through their showroom, we had told |
| 3 | | them, "We like all this flower motif that you |
| 4 | | have on all these bright colored baskets.  How |
| 5 | | can you incorporate that for us?" |
| 6 | Q | Okay.  Now, did you say there were multiple |
| 7 | | drawings that came out? |
| 8 | A | I just remember one drawing. |
| 9 | Q | You just remember one.  Okay. |
| 10 | A | And there being a question about the overall |
| 11 | | size.  I do remember that. |
| 12 | Q | Okay.  And then what happened after the |
| 13 | | drawing stage? |
| 14 | A | Again, I don't remember specifically about |
| 15 | | this product, but the normal procedure would |
| 16 | | be then they would make a hand sample. |
| 17 | Q | Okay. |
| 18 | A | And because this is an item that doesn't |
| 19 | | require tooling, they would have been able to |
| 20 | | make a hand sample, so I know that I would |
| 21 | | have asked for that. |
| 22 | Q | Okay.  What do you mean it doesn't require |
| 23 | | tooling? |
| 24 | A | For instance, a lot of the items in my |
| 25 | | department were trinket boxes that are overall |

1           metal pieces with a metal lid.  You actually

2           have to make a -- they call it a tooling, but

3           it's almost like a mold for the piece, which

4           takes a lot of time and a lot of money, about

5           $5,000 to make the actual machinery piece to

6           make that.

7                     Something like this doesn't require

8           that, so where we may not ask for a hand

9           sample before placing an order on a piece that

10          requires $5,000 worth of tooling up front, we

11          would ask for -- at that time they would give

12          you either a clay mold or a plastic piece that

13          would give you a good idea what it would look

14          like 3D.  This doesn't require that type of

15          $5,000 piece of machinery so we would asked

16          for a hand sample.  Actually, we wouldn't have

17          even asked for it, they would normally just

18          provide it for you, for us.

19   Q      Do you think they did provide one?

20   A      I'm guessing but I'm guessing yes.  Like

21          normally I would expect that and they would --

22          that would be their normal procedure on an

23          item like that, to give you a hand sample so

24          that you could really -- so that you knew what

25          you were buying.

Page 43

| | | |
|---|---|---|
| 1 | Q | Okay. When would that come? When would that |
| 2 | | hand sample come? |
| 3 | A | After you would look at a drawing and you've |
| 4 | | approved a drawing, it was normally -- |
| 5 | | normally and usually even back then it was |
| 6 | | like 30 to 45 days for a hand sample. |
| 7 | Q | Okay. Do you remember seeing any samples of |
| 8 | | this, the flower candle basket, of this |
| 9 | | product? |
| 10 | A | What do you mean samples? |
| 11 | Q | Any of those hand samples you were talking |
| 12 | | about? |
| 13 | A | I don't remember specifically getting the hand |
| 14 | | sample of this specific item, but in general, |
| 15 | | an item made out of wire like this that |
| 16 | | doesn't require tooling, we would get a hand |
| 17 | | sample. |
| 18 | Q | All right. Now after the hand sample, what |
| 19 | | comes next? |
| 20 | A | After the hand sample, if everything looked |
| 21 | | fine with the piece so that -- you know, we |
| 22 | | would look to make sure there were no rough |
| 23 | | edges that you'd cut your hands with. Those |
| 24 | | were the things that we would look for on a |
| 25 | | hand sample. No rough edges that I'm going to |

Stacey Bertke                          Design Ideas, Inc. v. Things Remembered, Inc.

Page 44

1        cut my hands.  Is it strong enough that the
2        bottom is not going to give in.  Just basic
3        quality type of things.

4                One of two things would happen.  Either
5        -- if we had already had our line review,
6        which was where, as a company, we would decide
7        what new items we were going to bring in.  At
8        a line review, if we had a hand sample, we
9        would show the hand sample.  If we didn't have
10       a hand simple yet, we would show a drawing.

11               So if we already had a line review we
12       would then place a purchase order for this.
13       If not, we would hold the hand sample, take it
14       to the line review, and if it was selected to
15       be a new item for the company, then we would
16       place the purchase order.

17  Q    I'm sorry.  Back on the drawings, who would --
18       do you recall who looked at the drawings for
19       the flower candle basket?

20  A    For this specific item?

21  Q    Yes.

22  A    No.  I would have definitely looked at it and
23       Ellen Frank may have looked at it, and
24       depending upon the timing, if we already had a
25       hand sample, then at the line review, which

Page 45

```
 1            was what Nelson would have attended, he
 2            wouldn't see the drawing, he would only see
 3            the hand sample.  If we didn't have the hand
 4            sample yet he would just see the drawing.  So
 5            he would know what we were suggesting to add
 6            to the assortment.
 7     Q      So Mr. Tejada would pick products for the
 8            product line?
 9     A      He would give the final approval.  So the
10            company had a budget.  Let's say the company
11            could afford to bring in 500 new items.  Every
12            buyer is pitching what items they want new for
13            their department.  The final decision on what
14            can we afford and which department numbers are
15            we going to put how many new items into, he
16            would be -- that would be his final call.
17     Q      Okay.  So you said Ellen Frank possibly saw
18            the drawing?
19     A      Yeah, because she was the director of product
20            development.
21     Q      Okay.  So you -- but you remember her seeing
22            the drawing?
23     A      No.
24     Q      I'm sorry?
25     A      I remember getting a drawing.  I remember
```

Page 46

```
 1            there being a problem with the sizing because
 2            I do remember going back and talking to them
 3            about the size of the original.  Beyond that I
 4            can't -- the norm would be that she would see
 5            drawings, but do I remember this specific
 6            item, her seeing this specific drawing, it's
 7            been too long.  I don't remember.
 8    Q       Anyone else besides Ms. Frank?
 9    A       You know, my assistants may have.
10    Q       Who were they?
11    A       At this time I'm not even sure.  It's 2001?
12    Q       Yes.
13    A       Okay.  So Lori worked for Ellen then so she
14            wasn't my assistant anymore.  I'm not even
15            sure exactly who was my assistant then.  I had
16            a lot of different assistants over the years.
17            I could give you a list of people it may have
18            been at that time, but I'm not 100 percent
19            certain who it was.
20    Q       Well, who was Linda Boyer?  Did I ask you?
21    A       She was my merchandise planner.
22    Q       Is that above you?
23    A       It's actually -- we work in -- it's like one
24            level below a buyer, but we work together,
25            not -- she doesn't report to me, she reports
```

Page 91

1   State of Ohio,              )
                                ) SS:  CERTIFICATE
2   County of Cuyahoga,         )

3        I, Karen A. Toth, RPR and Notary Public in and

4   for the State of Ohio, duly commissioned and

5   qualified, do hereby certify that the within named

6   witness, Stacey Bertke, was by me first duly sworn

7   to testify the truth, the whole truth, and nothing

8   but the truth in the cause aforesaid; that the

9   testimony then given by her was by me reduced to

10  stenotypy/computer in the presence of said witness,

11  afterward transcribed, and that the foregoing is a

12  true and correct transcript of the testimony so

13  given by her as aforesaid.

14       I do further certify that this deposition was

15  taken at the time and place in the foregoing caption

16  specified, and was completed without adjournment.

17       I do further certify that I am not a relative,

18  counsel, or attorney of either party, or otherwise

19  interested in the event of this action.

20       IN WITNESS WHEREOF, I have hereunto set my

21  hand and affixed my seal of office at Cleveland,

22  Ohio, on this 28th day of April, 2008.

23

24       _____
         Karen A. Toth, RPR and Notary Public
         in and for the State of Ohio.
25       My Commission expires May 6, 2008.

Exhibit L
3:07-cv-03077-JES-CHE    # 16-5    Page 14 of 26

Page 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CASE NO.   07-CV-03077

- - - - - - - - - - - - - - - - -
DESIGN IDEAS, LTD.,                )
                                   )
                Plaintiff,         )
vs.                                )
                                   )
THINGS REMEMBERED, INC.,           )
                                   )
                Defendant.         )
- - - - - - - - - - - - - - - - -


DEPOSITION OF SUZANNE SUTTER


-------------------------------------------------
    WOMBLE CARLYLE SANDRIDGE & RICE
    150 FAYETTEVILLE STREET, SUITE 2100
         RALEIGH, NORTH CAROLINA
-------------------------------------------------


THURSDAY, MAY 1, 2008

9:30 A.M.

PAGES 1 THROUGH 107

Page 68

1    ma'am, who was that?

2         A.  I can't remember.  I mean, I

3    honestly can't remember the name.  They

4    make -- They were wooden.  Their products

5    were all wooden.  That was their specialty,

6    was wood.

7         Q.  Well, let me show you the flower

8    candle basket.  I believe Mr. -- a flower

9    candle basket was marked in a previous

10   deposition.

11        A.  Uh-huh.

12        Q.  Do you recognize this item?

13        A.  Yes.

14        Q.  It's the flower candle basket?

15        A.  Yes.

16        Q.  We understand that this product was

17   sourced during that 9/11 trip; is that

18   right?

19        A.  Yes.

20        Q.  Can you tell me about your

21   involvement with that product?

22        A.  I remember going to the showroom

23   where we looked at lots -- I shouldn't say

24   lots, several -- more than two or three

25   different kinds of candle baskets.

Page 107

```
 1                    C E R T I F I C A T E
                  I, Nicole Ball Fleming, Notary
 2       Public in and for the County of Wake, State
         of North Carolina at large, do hereby
 3       certify:
                  That there appeared before me the
 4       foregoing witness at the time and place
         herein aforementioned;
 5                  That the said witness was sworn by
         me to state the truth, the whole truth, and
 6       nothing but the truth, in said cause;
                  That the testimony was taken before
 7       me and taken down stenographically,
         thereafter reduced in typewriting by me or
 8       under my direct supervision, and the
         foregoing consecutively-numbered pages are
 9       a complete and accurate record of all the
         testimony given by said witness;
10                  I do further certify that I am not
         counsel for nor in the employment of either
11       of the parties of this action, nor am I
         interested in the results of this action.
12                  This 2nd day of May, 2008.

13

14
                              NICOLE BALL FLEMING
15                               NOTARY PUBLIC

16

17

18

19

20

21

22

23

24

25
```

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

- - -

Design Ideas, Ltd.,           )
                              )
            Plaintiff,        )
                              )
      vs.                     )   Case No. 3:07-cv-03077
                              )
Things Remembered, Inc.,      )
                              )
            Defendant.        )

- - -


        Deposition of Ellen Frank, a witness
herein, called by the plaintiff for
cross-examination pursuant to the Federal Rules of
Civil Procedure, taken before Karen A. Toth,
Registered Professional Reporter and Notary Public
in and for the State of Ohio, at Jones, Day,
North Point Building, 901 Lakeside Avenue,
Cleveland, Ohio 44114, on Wednesday, April 23, 2008,
commencing at 9:32 a.m.

- - -

Page 26

```
 1    Q    Was that person Ms. Derry, Trisha Derry?

 2    A    Yes.

 3    Q    And I think you said she was there for how

 4         long, for --

 5    A    Approximately two years as -- to my best

 6         recollection.

 7    Q    Can you tell me -- okay.  What did Ms. Derry

 8         do?

 9    A    She created artwork from requests that were

10         made from the merchants.  And she would create

11         the design and send it to our vendors.  When

12         samples would come back over, she worked with

13         the merchants to make sure if the artwork

14         needed correction or if the sample needed

15         correction as well.  That was part of her

16         function.

17    Q    Product samples, what do you mean by samples?

18    A    Well, if you get the sample back, to make sure

19         it matched what the artwork was that we sent

20         overseas, that the vendor wasn't making

21         mistakes from the initial artwork, the drawing

22         or computer rendering to the first sample.  So

23         the interpretation of the artwork was

24         correct.

25    Q    So correct me on this, you do artwork and then
```

```
 1              computer rendering?

 2    A    We would send it, you know, via e-mail to --

 3         or she would do computer enhancement to it,

 4         depending on the files that they needed,

 5         depending on the resource.

 6    Q    And artwork, so what would the artwork be?

 7    A    A drawing of the item.

 8    Q    Would she do that?

 9    A    Yes.

10    Q    Would anyone else do drawings?

11    A    Yes, because we had one person and that was it

12         for a lot of different SKUs that we would

13         start and develop.  So sometimes we got

14         drawings from our vendors.  It was usually two

15         ways, either the vendor, you know, did artwork

16         or we did artwork.

17    Q    Would a buyer generate artwork?

18    A    No.

19    Q    So from the artwork, would it go to computer

20         files, something like e-mail or something and

21         then you get samples, right?

22    A    Uh-huh.

23    Q    And what, would you approve the samples,

24         Things Remembered would?

25    A    Depends on how it got executed and if it made
```

```
 1          it into the assortment.

 2   Q      Let me ask, so Lori Lange you mentioned.  I

 3          believe you said she was an assistant?

 4   A      Yeah.

 5   Q      Is she your assistant?

 6   A      She was my assistant for a while, yes.

 7   Q      Was she your assistant for that entire period,

 8          2000 to 2002?

 9   A      As I recall, she was.

10   Q      Would she assist anyone else?

11   A      She would pitch in whatever we needed her

12          for.  You know, a lot of it was physical too,

13          you know, unpack samples, move the sample

14          room, collect things, work in marketing.  She

15          did a lot of clerical functions.

16   Q      Would she assist Ms. Derry?

17   A      Other than keeping track of what her

18          priorities were, you know, that was it pretty

19          much it.

20   Q      How about the buyers or the merchants, would

21          she assist them?

22   A      Only from when samples would come in, packing,

23          unpacking things, shifting around sample

24          rooms, shifting around display rooms.  She

25          would pitch in in general.
```

```
 1   Q    So let's see, so you said the artwork that she

 2        would deal with during this period, it was

 3        either generated by the vendor or it would be

 4        generated by Ms. Derry, right?

 5   A    Uh-huh.

 6   Q    And I don't think -- I think you said there

 7        wouldn't be anyone, it would either be the

 8        vendor generated or Ms. Derry?

 9   A    Correct.

10   Q    How would Ms. Derry come up -- how would she

11        generate the artwork at that time?  What would

12        -- how would the process start?

13   A    We would have creative discussions during our

14        product development about trends we were

15        seeing, you know, which is very typical of all

16        retailers.  You know, knowledge of the market,

17        what they are seeing in Women's Wear Daily,

18        you know, or trend publications and that type

19        of thing.  And they would do creative boards

20        based upon trends.  We would shop.  We would

21        go to the Ambiente Show in Germany, for

22        example, which is a big show, and we'd shop to

23        look at the trends and color and fabrication

24        and come back.

25   Q    Frankfort?
```

Page 30

```
 1   A    The Frankfort show.

 2   Q    Everybody goes to that, that's normal I

 3        think.

 4   A    Uh-huh.  And we would come back and share, you

 5        know, what they thought were the trends and

 6        how does it get interpreted into a product

 7        that we would engrave in our stores.  And then

 8        we would take the discussion from there and

 9        then the merchants would submit art requests

10        to -- let's say they had an item that was down

11        trending and they needed something replaced in

12        their assortment.  They would submit a request

13        to her and we would discuss, you know, how do

14        you take those trends, interpret it into

15        updating or creating a new SKU to replace a

16        downtrending item in the assortment.

17   Q    Would these requests be verbal or would they

18        be written in some way?

19   A    They would be verbal to start with, and then

20        we would have them write up a formalized

21        request.  And we tracked that according to

22        priority, in terms of volume, what was the

23        most important to our business.

24   Q    And when you say formalized request, how would

25        it be formalized?  Was there a form?
```

```
 1   A   There was a form.

 2   Q   Was it the same form that you use today, that

 3       TR uses today?

 4   A   We don't have a formalized form right now.

 5       We're not using it.  The process has changed.

 6   Q   So the merchant would submit an art request.

 7       So generally during that time, between the

 8       artwork stage and the computer e-mail stage

 9       where you'd send it to a vendor or -- I

10       imagine, how long would that process take,

11       generally?

12   A   Generally, five to six weeks.

13   Q   And what would happen during that process

14       between the merchant, yourself -- or during

15       that process between the merchant, yourself

16       and Ms. Derry?

17   A   Ms. Derry would create thumbnail sketches, you

18       know, for us to review to see if she was

19       interpreting their request correctly.  And

20       we'd meet and say, "This is right."  "This is

21       wrong."  "Pursue this drawing."  "This is more

22       what we had in mind."  And she would go to the

23       next phrase and hone it.  And we would review

24       it then before it was submitted to the vendor.

25   Q   Was it a fairly collaborative process where
```

Page 32

1              Ms. Derry and you and the merchants would

2              bounce ideas off of each other, or was it more

3              that you and the merchants would tell

4              Ms. Derry what to draw?

5    A         It was fairly collaborative.

6    Q         Would she go out to the shows, like to

7              Ambiente or anything like that?

8    A         Yes.

9    Q         Would she go to all of the shows?

10   A         Not as I recall, based upon budget concerns.

11             Depending on the time and what was in our

12             budget during that time frame.  No, she

13             wouldn't go to every show.

14   Q         Monday -- not yesterday, Monday, I believe

15             Ms. Bertke and Mr. Tejada said or either of

16             them said that you all went to the New York

17             Gift Fair and the Atlanta Gift Show, Things

18             Remembered did at least --

19   A         Yes.

20   Q         -- during that period.

21   A         Yes.

22   Q         Do you recall if Ms. Derry went with you

23             during that period?

24   A         No, I don't.  I don't recall that.

25   Q         Did she go to Ambiente with you?

| 1 | A | One time that I recall. |
| 2 | Q | Do you recall, was that 2000 or 2001? |
| 3 | A | I don't recall which year.  We would go every |
| 4 | | year.  I don't recall. |
| 5 | Q | But it was either? |
| 6 | A | Yeah. |
| 7 | Q | Did she go to any of the domestic shows with |
| 8 | | you during those years? |
| 9 | A | One or two, but I don't recall which ones. |
| 10 | Q | But she was only with you for a few years, |
| 11 | | right? |
| 12 | A | Correct. |
| 13 | Q | Roughly 2000 to 2002? |
| 14 | A | Correct. |
| 15 | Q | Would you typically bring your assistants to |
| 16 | | these shows? |
| 17 | A | No. |
| 18 | Q | Budget? |
| 19 | A | Yes. |
| 20 | Q | Now, okay.  I think you said Ms. Derry would |
| 21 | | create thumbnail sketches from the meetings |
| 22 | | you'd have with her and with the merchants? |
| 23 | A | Yes. |
| 24 | Q | Okay.  What are thumbnail sketches? |
| 25 | A | Little roughs.  You know, little -- instead of |

```
 1   State of Ohio,          )
                             )  SS:   CERTIFICATE
 2   County of Cuyahoga,     )

 3        I, Karen A. Toth, RPR and Notary Public in and

 4   for the State of Ohio, duly commissioned and

 5   qualified, do hereby certify that the within named

 6   witness, Ellen Frank, was by me first duly sworn to

 7   testify the truth, the whole truth, and nothing but

 8   the truth in the cause aforesaid; that the testimony

 9   then given by her was by me reduced to

10   stenotypy/computer in the presence of said witness,

11   afterward transcribed, and that the foregoing is a

12   true and correct transcript of the testimony so

13   given by her as aforesaid.

14        I do further certify that this deposition was

15   taken at the time and place in the foregoing caption

16   specified, and was completed without adjournment.

17        I do further certify that I am not a relative,

18   counsel, or attorney of either party, or otherwise

19   interested in the event of this action.

20        IN WITNESS WHEREOF, I have hereunto set my

21   hand and affixed my seal of office at Cleveland,

22   Ohio, on this 29th day of April, 2008.

23

24        _____
          Karen A. Toth, RPR and Notary Public
          in and for the State of Ohio.
25        My Commission expires May 6, 2013.
```