# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| _____ | ) | |
| DESIGN IDEAS, LTD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:07cv03077 |
| v. | ) | |
| | ) | |
| THINGS REMEMBERED, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANT'S BRIEF IN OPPOSITION TO
## PLAINTIFF'S MOTION TO EXTEND FACT DISCOVERY

Defendant, Things Remembered, Inc. ("Things Remembered"), submits this brief in opposition to Plaintiff's Motion to Extend Fact Discovery (Doc. 16) [hereinafter Plaintiff's Extension Motion] filed by plaintiff, Design Ideas, Ltd. ("Design Ideas").  Filed with this brief is a Declaration of Philip J. Moy Jr. in Support of Defendant's Opposition to Plaintiff's Motion to Extend Fact Discovery [hereinafter Moy Dec.], which provides factual support for Things Remembered's opposition.

In the Scheduling Order (Doc. 11) of September 11, 2007, the Court set May 12, 2008 as the date by which the parties were to complete fact discovery.  This date was set after attorneys for Design Ideas had reneged on an agreement between counsel at the Rule 26(f) planning conference and sought to shorten the time for fact discovery by approximately three months.  Now, after prolonging for its own convenience the parties' responses to written discovery and waiting until the final weeks of discovery to conduct any depositions, Design Ideas seeks an extension of the discovery deadline.  Design Ideas' motion should be denied.

## I.    Background of the Lawsuit

This is an action for copyright infringement.  Design Ideas claims to be the owner of a copyright registration for a series of wire sculptures that depict flowers.  The registration, U.S. Copyright Registration No. VA 1-055-871 ("the '871 registration"), includes among its depicted works a votive cup having three wire-formed flower shapes, as shown in three views from the '871 registration reproduced below:



FIG. 4a          FIG. 4b          FIG. 4c

Petals Votive Cup
Height=3 inches
Diameter (Base)=2 inches
Diameter (Top)=2.7 inches

Design Ideas alleges that it has the exclusive right to make copies of not only this votive cup product, but also any wire product including flower shapes similar to those shown in the '871 registration.

In the autumn of 2001, Things Remembered developed—in conjunction with an Asian supplier of wire products—a heart-shaped candle basket that included a large heart-shaped

2

engraving plate and a series of wire-formed flowers on the top and sides of the basket. *See* Defendant's Responses to Plaintiff's First Set of Interrogatories at 7 (Plaintiff's Extension Motion, Exh. H). Design Ideas' complaint alleges that this product, Things Remembered's Model No. 518550 flower candle basket ("the Flower Candle Basket"), infringes the '871 registration. An image of the accused Flower Candle Basket is reproduced below:



Commercial quantities of the Flower Candle Basket were first shipped from the Asian supplier to Things Remembered in January 2002, and Things Remembered began selling the accused product in February 2002. The last shipment of the accused product from the Asian supplier to Things Remembered was received in October 2003. Moy Dec. ¶¶ 4-5.

In September 2004, three years after the accused product was developed and nearly a year after shipment of the product from the supplier was discontinued, Design Ideas' attorneys first contacted Things Remembered to accuse the Flower Candle Basket of infringing the '871 registration.  The attorneys for Design Ideas and Things Remembered corresponded with each other regarding Design Ideas' allegation of copyright infringement for approximately nine months.  The last letter of this correspondence was sent by Things Remembered's attorneys on June 9, 2005.  Design Ideas' attorneys never responded to this letter, and Things Remembered had no contact from Design Ideas regarding the Flower Candle Basket for nearly two years. Design Ideas' silence was broken on March 19, 2007, when the Complaint was filed to commence this action.  *Id.* ¶¶ 6, 7, 9, 10 & Exh. A.

## II.     Summary of Discovery Proceedings

As noted above, the Court issued a Scheduling Order on September 11, 2007 setting a period of fact discovery ending on May 12, 2008.  That Order followed a scheduling conference between the Court and the parties' attorneys on the same day.  Prior to the scheduling conference, the parties' attorneys conducted a Rule 26(f) planning conference on August 23, 2007, at which time the parties agreed to a schedule largely coinciding with the schedule subsequently set by the Court, including cutting off fact discovery on May 12, 2008.  *See* Defendant's Report of Discovery Planning Conference and Proposed Discover Plan (Doc. 9) at 3-4 [hereinafter Defendant's Rule 26(f) Report]; Plaintiff's Report of Discovery Planning Conference and Proposed Discovery Plan (Doc. 8) at 3 [hereinafter Plaintiff's Rule 26(f) Report].

Between the Rule 26(f) planning conference between the parties' attorneys and the scheduling conference with the Court, Design Ideas reneged on the agreement between counsel and proposed that the schedule be revised so that fact discovery would close three months earlier,

4

on February 12, 2008. Defendant's Rule 26(f) Report at 4; Plaintiff's Rule 26(f) Report at 4. At the scheduling conference on September 11, 2007, counsel for Things Remembered argued that the originally agreed-to fact discovery deadline was reasonable, pointing to the possibility that Design Ideas might want to take discovery outside the United States. Counsel for Things Remembered also argued that providing the discovery plan agreed to at the Rule 26(f) planning conference would lessen the probability that either party would need to seek an extension of the schedule. The Court appeared to agree, establishing a schedule setting May 12, 2008 as the close of fact discovery.

Between the date of the Scheduling Order and the cut-off date for fact discovery, the parties engaged in written discovery and deposition discovery as outlined below.

### A.    Written Discovery

Things Remembered served interrogatories and production requests on Design Ideas on October 12, 2007. Although Things Remembered's attorneys emailed courtesy copies of these requests to Design Ideas' attorneys, they were formally served by mail. As a consequence, Design Ideas' written responses to Things Remembered's initial discovery were due thirty-three days later, on November 14, 2007. Moy Dec. ¶ 11.

Design Ideas served its initial interrogatories and production requests directed to Things Remembered on October 15, 2007. They also were served by mail with courtesy copies sent by email. Things Remembered's responses initially were due on Monday, November 19, 2007. *Id.* ¶ 12.

On November 8, 2007, Design Ideas' attorney Michael Platt called the undersigned Things Remembered attorney and requested an extension of time for Design Ideas to respond to Things Remembered's initial discovery requests. Things Remembered's attorney indicated that he would agree to an extension for Design Ideas' responses on the condition that Things

5

Remembered be granted an extension of equal length. The attorneys agreed to extend the time for each party's responses by two weeks. This meant that Design Ideas' responses were due on November 28, 2007 and Things Remembered's responses on December 3, 2007. *Id.* ¶ 13 & Exh. B.

Mr. Platt subsequently made three requests for additional extensions of time for Design Ideas' responses to Things Remembered's initial interrogatories and production requests. These calls were made on November 15, 2007, December 6, 2007, and December 20, 2007. Each time, the undersigned attorney for Things Remembered agreed to extend the time for Design Ideas' responses on the condition that Things Remembered's responses be extended by the same period. The final agreement between the parties extended the time for Design Ideas' responses to December 28, 2007 and Things Remembered's responses to January 4, 2008. Design Ideas served its written responses to Things Remembered's initial interrogatories and production requests on the extended due date of December 28, 2007. Things Remembered served its corresponding responses a day early, on January 3, 2008. *Id.* ¶¶ 14-17 & Exhs. C-E.

Following the deposition of a former Design Ideas designer, Jenna Walsh, Things Remembered served a second set of written discovery requests upon Design Ideas on February 26, 2008. These discovery requests included requests for admission and related interrogatories and production requests. Design Ideas' responses were due on March 31, 2008. On March 27, 2008, Design Ideas attorney Garfield Goodrum telephoned Richard Minnich, another attorney for Things Remembered, and requested a one-week extension of time to respond to Things Remembered's first requests for admission and second interrogatories and production requests. Mr. Minnich agreed to the requested extension, and the Design Ideas' responses were served on the extended due date, April 3, 2008. *Id.* ¶¶ 18-19.

6

Design Ideas propounded a second set of written discovery upon Things Remembered. This second set included requests for admission and related interrogatories and production requests. Copies of the discovery requests were emailed to the undersigned attorney for Things Remembered at 9:59 p.m. on Saturday, April 12, 2008. The requests included a certificate of service stating that copies also were mailed to Things Remembered's attorneys on April 12, 2008. On May 9, 2008, Things Remembered served a consolidated response to these requests. The response objected to Design Ideas' second set of discovery requests on the ground that they were served too late to give Things Remembered the full time period provided by the Federal Rules of Civil Procedure for responding before the close of fact discovery. Things Remembered's response also objected to Design Ideas' second set of interrogatories as being excessive in number. *Id.* ¶¶ 20-21.

### B.      Deposition Discovery

The parties' attorneys began discussing dates for depositions in January 2008. On January 11, 2008, the undersigned advised Messrs. Goodrum and Platt that Things Remembered wanted to depose Jenna Walsh, a former Design Ideas designer identified in Design Ideas' interrogatory responses, and asked whether Ms. Walsh was available for a deposition during a particular time period. On January 31, 2008, Mr. Goodrum informed the undersigned via email of the dates of availability for Ms. Walsh during February and March 2008. Ultimately, Things Remembered deposed Ms. Walsh on February 19, 2008 in Silver Spring, Maryland. *Id.* ¶¶ 22-24.

In his January 31, 2008 email, Mr. Goodrum also stated: "We'll advise shortly on whom we'd like to depose." During the deposition of Ms. Walsh on February 19, Mr. Goodrum advised the undersigned that Design Ideas wanted to depose certain current and former Things Remembered employees during March 2008. Things Remembered's attorneys then engaged in

7

an effort to determine a workable schedule whereby four deponents, two of whom no longer were employed by Things Remembered but still resided in the Cleveland area, could be deposed by Design Ideas in Cleveland before the end of March. *Id.* ¶¶ 23-27 & Exh. F.

On March 4, 2008, the undersigned advised Mr. Goodrum that the four deponents—Things Remembered's former Merchandise Manager Stacey Bertke and former Vice President of General Merchandising Nelson Tejada and Things Remembered's current Director of Merchandising Ellen Frank and current Chief Financial Officer David Stefko—all were available for depositions in Cleveland during March 24-28, 2008 and requested that Mr. Goodrum settle on specific dates for them as soon as possible.[1] Mr. Goodrum stated in a responsive email message on the same day regarding the depositions of Things Remembered personnel: "We'll advise in the next day or so." *Id.* 28-29 & Exhs. H-I.

In the meantime, the parties' attorneys were arranging for Things Remembered to depose three additional Design Ideas witnesses during the week of April 7-11. On March 6, 2008, in an email addressing the location of depositions of Design Ideas' personnel, Mr. Goodrum reiterated with respect to the dates on which Design Ideas would take its depositions of Things Remembered personnel that he would "get back to you on our desired dates shortly." *Id.* ¶¶ 30-31 & Exh. J.

Then, later on March 6, 2008, in an email to the undersigned providing specific dates for the depositions of Design Ideas personnel, Mr. Goodrum advised that Design Ideas would not be able to depose Things Remembered's personnel until the end of April 2008. *Id.* ¶ 32 & Exh.K.

---

[1] Mr. Goodrum also had expressed an interest in deposing Things Remembered's former President Suzanne Sutter in Cleveland. On February 22, 2008, Things Remembered's attorneys advised Mr. Goodrum that Ms. Summer no longer lived in the Cleveland area, having moved to North Carolina. Moy Dec. ¶ 27 & Exh.G.

Fortunately, Things Remembered's attorneys were able to determine quickly that the four Things Remembered deponents resident in Cleveland were all available for depositions during the week of April 21-28. On March 7, 2008, the undersigned advised Mr. Goodrum of the specific dates each of the four Things Remembered witnesses would be available during that week and requested that Mr. Goodrum specify the desired date for each witness's deposition. *Id.* ¶ 33 & Exh. L.

For nearly a month, despite reminders from Things Remembered's attorneys, Mr. Goodrum failed to provide specific deposition dates for Ms. Bertke, Mr. Tejada, Ms. Frank, and Mr. Stefko. By April 4, 2008, Things Remembered's attorneys had become concerned that the witnesses' schedules might have changed during that period and asked Mr. Goodrum to provide his dates of availability to determine whether a workable schedule could be constructed. Mr. Goodrum supplied dates for his availability on April 8, 2008. By April 16, 2008, Things Remembered's attorneys were able to determine when each of the four witnesses were available during the week of April 21-24 and advised Mr. Goodrum of those dates. On April 16, 2008, Mr. Goodrum finally set dates for the depositions of Ms. Bertke, Mr. Tejada, Ms. Frank, and Mr. Stefko. *Id.* ¶¶ 34-40 & Exhs. M-P.

In the interim, during April 9-10, 2008, Things Remembered conducted the depositions of Design Ideas' Design Director Chris Hardy, its President Andy Van Meter, and Yobo Du of Design Ideas-China in Springfield. *Id.* ¶ 30.

Design Ideas ultimately deposed Ms. Bertke, Mr. Tejada, Ms. Frank, Mr. Stefko, and Things Remembered's General Counsel Charles Ibold in Cleveland during the week of April 21-25, 2008. The deposition of Ms. Sutter, the former Things Remembered President, was taken by

Design Ideas in Raleigh, North Carolina, on May 1, 2008. Accordingly, all of the depositions

taken by Design Ideas were scheduled during the final three weeks of fact discovery. *Id.* ¶ 41.

### III.    Design Ideas Has Only Itself to Blame for Its Apparent Failure to Conduct All of Its Desired Discovery

Design Ideas' motion claims that it is "critically bereft of critical information" because

Things Remembered engaged in "a course of evasive discovery tactics." Plaintiff's Extension

Motion at 1. A primary example of Things Remembered's alleged skullduggery is that it did not

respond to Design Ideas' initial discovery requests until *"eighty days* after Design Ideas first

served" them. *Id.* at 2 (emphasis in original) (pertaining to production requests); *see also id.* at 6

(pertaining to interrogatories).

Design Ideas should be embarrassed to levy such charges. As explained above and as set

forth in the Moy Declaration and its exhibits, the reason Things Remembered did not respond to

Design Ideas' initial written discovery requests within the thirty-three days required by the

Federal Rules of Civil Procedure is that Design Ideas—specifically Mr. Platt, who signed

Plaintiff's Extension Motion—made repeated requests for extensions of time to respond to

Things Remembered's earlier-served interrogatories and production requests. To charge Things

Remembered with misconduct because it merely required reciprocation for the courtesy of

consenting to Design Ideas' extension requests is outrageous.

Similarly outrageous is Design Ideas' claim that it had "undertaken an ambitious

schedule of depositions." *See id.* at 6. As described above and as set forth in the Moy

Declaration, Design Ideas expressed no real interest in taking any depositions until its attorneys

sat to defend the deposition of Jenna Walsh in February 2008. At that time, Mr. Goodrum

advised that he wanted to take the depositions of several current and former Things Remembered

employees in March 2008. After Things Remembered provided him with dates that would allow

him to accomplish his stated goal, however, Mr. Goodrum advised that Design Ideas' depositions of Things Remembered's witnesses would need to be set back by a full month.  As a consequence, Design Ideas did not take its first deposition until April 21, 2008, a mere three weeks before the close of fact discovery.

Any shortcoming in the information uncovered by Design Ideas during fact discovery in this case is the responsibility of Design Ideas alone.  The longer the time between the occurrence of an event and the day on which one makes inquiries regarding that event, the less information will be found.  The accused Flower Candle Basket was developed in 2001 and sold primarily in 2002 and 2003.  It had been a discontinued product at Things Remembered for almost a year by the time Design Ideas made its first allegations of infringement against the product through a cease-and-desist letter from Design Ideas' attorneys.  Then, after nine months of correspondence between attorneys for the parties, Design Ideas fell utterly silent for nearly two years, during which time people involved with the project left Things Remembered.  In March 2007, more than five years after the product had been created, Design Ideas filed this action.  Design Ideas' acquisition of information on the accused product was further delayed by its own conduct in seeking extensions of time to respond to Things Remembered's earlier-served discovery requests.  Finally, once Design Ideas received its responses, it dawdled in seeking to depose current and former Things Remembered personnel concerning events that occurred more than six years since the product was developed, conducting its *first* deposition a mere three weeks before the close of fact discovery.

Design Ideas' conduct in this action presents the Court with no justification for extending the period allotted for fact discovery.  Design Ideas had plenty of time within the schedule set by the Court to conduct all of its required fact discovery.  That Design Ideas did not make efficient

use of the time allowed for fact discovery does not justify revising the schedule set by the Court

or requiring Things Remembered to expend resources in responding to additional discovery

requests and attending additional depositions.  Particularly in view of Design Ideas' attempt in

September 2007 to shorten the discovery period by three months, the Court should have no

sympathy for Design Ideas' request in May 2008 to lengthen it by sixty days.

**IV.    The Primary Basis for Plaintiff's Motion Is Non-Existent**

During a telephone conference with the Court on May 15, 2008, Design Ideas' attorney

Michael Platt advised that the primary reason Design Ideas was seeking to extend fact discovery

was that it had only recently discovered the identity of a designer employed by Things

Remembered during the development of the accused Flower Candle Basket.

In its motion, Design Ideas states that this designer, Trisha Derry, "must necessarily have

been involved with the Flower Candle Basket, and particularly with any drawings associated

with the development of that product."  Plaintiff's Extension Motion at 10.  Design Ideas goes on

to accuse Things Remembered of misconduct in not identifying Ms. Derry as a person having

knowledge of the development of the accused Flower Candle Basket.

> Trisha Derry was not revealed to Design Ideas until the deposition of Ellen Frank
> on April 23, 2008, ***one hundred and ninety-two days*** after Design Ideas requested
> the identity of such a person and a mere 19 days before the close of fact
> discovery. Things Remembered forestalled the identification of a key witness
> until such time that Design Ideas could not prepare for and take her deposition
> given its already scheduled and outstanding discovery efforts. It is simply
> incredible that faced with its obligation under Fed. R. Civ. P. 26(a)(1) and Design
> Ideas' Interrogatory No. 2, Things Remembered failed to identify its only product
> designer as even possibly having information relevant to the development of the
> Flower Candle Basket.

*Id.* (emphasis in original).

Of course, the reason Ms. Derry was not identified as having information regarding the

development of the accused Flower Candle Basket is that she had no involvement with the

product. Had Mr. Platt, who signed Plaintiff's Extension Motion, read more carefully the deposition testimony of the persons actually involved with the product's development, he would have appreciated that not identifying Ms. Derry was the proper course of conduct.

Ellen Frank, who testified at length concerning the role at Things Remembered of in-house designers generally and Ms. Derry specifically, stated that Ms. Derry was involved in creating artwork for only forty percent of Things Remembered products; sixty percent of the time artwork would originated with the vendors, the suppliers of the product.

> Q  When we first talked about artwork or drawings, I think you said to me that either Ms. Derry would generate the drawings or the vendors would; is that right?
>
> A  Yes, if there was artwork involved, it would be usually either one of those.
>
> Q  So at the start of a product design process it would be either Ms. Derry or the vendor?
>
> A  Yes.
>
> Q  How often would the vendor generate the artwork?
>
> A  To my recollection, because of the amount of work and the amount of SKUs we had, it was probably at that time 40 percent Ms. Derry, 60 percent vendors. And that is just a rough estimate.

Frank Depo. at 89-90 (Moy Dec. Exh. Q). Accordingly, Design Ideas basic premise, that Ms. Derry *must* have been involved with the development of the accused product, is dead wrong. Moreover, since she generated artwork for less than half of Things Remembered's products at that time, it is more probable than not that she had no involvement.

Any question regarding Ms. Derry's involvement with the Flower Candle Basket was put to rest, however, by further testimony by Ms. Frank. When asked whether Ms. Derry was involved with the accused product, Ms. Frank stated: "I don't recall her being involved in it at all." *Id.* at 134.

Stacey Bertke, who unquestionably was the person at Things Remembered with the primary responsibility for developing the accused product, also was asked about the role of designers in connection with artwork for the product. Her testimony is unequivocal: Things Remembered did not use any designers to generate artwork for the product.

> Q Do you recall whether you hired anyone to do artwork for the flower candle basket?
>
> A I know that we did not.
>
> Q Okay. How do you know that?
>
> A Because I remember being in their showroom and looking at their floral items and telling them to incorporate it into a basket for us.

Bertke Depo. at 77-78 (Moy Dec. Exh. R).

Thus, Design Ideas' primary reason for seeking an extension of fact discovery—as articulated by Mr. Platt during the May 15 conference with the Court—utterly fails to justify extending discovery. Design Ideas is asking the Court to extend discovery to allow it to track down and question a former Things Remembered employee, Trisha Derry, who had no role in developing the accused Flower Candle Basket. Design Ideas might as well be asking the Court to extend discovery so that it can track down and depose the person who served as the receptionist at the company's front door.

## V.     Design Ideas Offers No Legitimate Reason to Extend Discovery

Design Ideas' motion is filled with nitpicking complaints that boil down to a single issue: Things Remembered does not have volumes of documents detailing the development of the accused Flower Candle Basket. The reason for the paucity of documents is simple: there never were many documents generated in connection with the product's development.

The process by which the accused product was developed was set forth succinctly in Ms. Bertke's testimony.

14

Q    Were you involved with the development of that product?

A    Yes.

Q    Can you tell me about that?

A    We had had a previous grouping of candle baskets that we did with another company called Accining.

* * *

A    They had a small heart shaped metal mesh basket in their office that we had them make larger that we had looked at for years. And we had them add candles to it and we had them do a couple different shapes. The heart was the best selling shape, which was true always for us in all products, that the heart would always be the best selling shape. And we also had another shape that we had was a square, and the square had an engraving plate on the top because the lid of it was flat enough to have an engraving plate, whereas the heart was rounded from them. Those items sold well for us. I remember being in the Libra showroom. They had all kinds of various baskets and candleholders, not a hinged basket like this, but they had almost like a kind of -- like almost like if you took the lid off of this, like bowls, et cetera, that had floral motifs that we asked if they could make a new version of our candle basket that we had bought from Accining, and if they could design something for us.

Q    And so what did they say?

A    They said yes. And we showed them -- I always carry copies of our catalogues with us, so I showed them pictures of this is what worked for us and told them the important part, that it needed to hold eight votive candles. It needed to have another candleholder come with it and we wanted an engraving plate on the top because that had made the square one so successful and around those parameters could they design something for us.

Bertke Depo. at 34-36 (Moy Dec. Exh. R).

This process did not generate volumes of documents. Moreover, between the time that the accused Flower Candle Basket was developed in 2001 and Design Ideas' first allegation of infringement in 2004, the product had been discontinued and three years had passed. Things Remembered has produced all responsive documents it has been able to find, including images of the prior candle baskets mentioned in Ms. Bertke's testimony. That Ms. Bertke or other Things Remembered personnel might have discarded documents relating to the development of a

discontinued product during the years before Design Ideas raised its allegations would be reasonable to expect: they needed to clear their files for newly developed products. What is unreasonable is Design Ideas' claim that the absence of documents justifies extending discovery.

Design Ideas' motion also makes much of the use of the word "artworks" in an email sent by Christina Sun, a Taiwan-based employee of Things Remembered's sourcing agent, AMC. *See* Plaintiff's Extension Motion at 2-3. This email demonstrates two important facts on its face: (a) English is not Ms. Sun's first language; and (b) no particular significance should attach to her vocabulary. To the extent Ms. Sun's email reflects a true recollection of actual events, the term "artworks" probably refers to the pictures of prior candle baskets shown by Ms. Bertke to the Asian supplier Libra, as set forth in her deposition testimony quoted above.

More to the point, any "artworks" that Ms. Sun might still possess (an unlikely circumstance) are not within Things Remembered's custody or control and thus could not have been produced by Things Remembered in discovery. Accordingly, to the extent Design Ideas' motion is grounded on Things Remembered's lack of such documents, it is without foundation.

Moreover, if Design Ideas is seeking to extend discovery now so it can embark on a fishing expedition to Taiwan, it is far too late. Design Ideas has known of the Asian source for the accused Flower Candle Basket since 2004, when Things Remembered identified Libra, a Taiwanese company, as the source for the product. Moy Dec. ¶ 8. Furthermore, the issue of discovery outside the United States was specifically raised by Things Remembered's counsel during the September 11, 2007 scheduling conference with the Court, and the roles of AMC and Christina Sun were specifically identified in Things Remembered's interrogatory responses served on January 3, 2008. It is an abuse of the discovery process for Design Ideas to justify extending discovery because it only recently decided it needs to depose Ms. Sun.

Design Ideas also complains regarding the erroneous inclusion of the word "flower" in Things Remembered's initial responses to Design Ideas first interrogatories in connection with a reference to a previously sold heart-shaped wire mesh candle box that served as a template for the development of the accused Flower Candle Basket. The error was not intentional, and Things Remembered amended its response as soon as the error was pointed out to its counsel. Moreover, Things Remembered cannot fathom why this incident would justify an extension of discovery. Now that it is clear that the prior product did ***not*** have any flowers, what issue is raised that requires additional discovery?

**VI.     Design Ideas' Motion Violates the Stipulated Protective Order**

The Stipulated Protective Order (Doc. 15) in this case requires the attorneys to treat deposition transcripts as "CONFIDENTIAL MATERIALS" for thirty-three days after the transcript is delivered to allow the party having a relationship with the deponent to designate portions that should be kept confidential. Stipulated Protective Order ¶ 7, at 4. "CONFIDENTIAL MATERIALS" of any type are not to be disclosed by the attorneys receiving them to anyone other than specifically designated persons. *Id.* ¶ 4, at 2-3. Moreover, any "CONFIDENTIAL MATERIALS" filed with the Court are to be filed manually in envelopes bearing a prescribed statement regarding their confidential nature. *Id.* ¶ 14, at 8-9.

In the face of these clear restrictions on the use of recent deposition transcripts and other confidential documents obtained in discovery, Design Ideas included as exhibits to its electronically filed Plaintiff's Extension Motion the following "CONFIDENTIAL MATERIALS," as defined by the Stipulated Protective Order:

(a)     A document produced to Design Ideas' attorneys by Things Remembered bearing production number TR00229 and the designation "CONFIDENTIAL – Subject to Protective Order" as Exhibit C;

(b)       A portion of the transcript of the April 24, 2008 deposition of David Stefko, Things Remembered's Chief Financial Officer, as Exhibit E;

(c)       Portions of the transcript of the April 23, 2008 deposition of Ellen Frank, Things Remembered's Director of Merchandising, as Exhibits I and M;

(d)       A portion of the transcript of the April 21, 2008 deposition of Stacey Bertke, a former Things Remembered Merchandise Manager, as Exhibit K; and

(e)       A portion of the transcript of the May 1, 2008 deposition of Suzanne Sutter, Things Remembered's former President, as Exhibit L.

All of the deposition transcripts were "CONFIDENTIAL MATERIALS" when Plaintiff's Extension Motion was filed, as less than thirty-three days had lapsed since the transcripts were received by Things Remembered's counsel. The document filed as Exhibit C was expressly confidential by the stamped statement on the document. Accordingly, the only appropriate way to file these materials was to conduct a manual filing in a sealed envelope, as required by paragraph 14 of the Stipulated Protective Order.[2] Because these materials were filed electronically, however, they have been published to the world via the Internet.

Things Remembered is considering its options for redress against Design Ideas and the Design Ideas attorney who publicly filed these materials in clear violation of the Stipulated Protective Order. In the meantime, however, the Court should ensure that this transgression does not go unpunished by denying Design Ideas' motion to extend fact discovery, as being based on filings in violation of the Stipulated Protective Order.

---

[2] Design Ideas also could have sought Things Remembered's consent to the public filing of these materials, but Things Remembered was never asked for such consent.

**VII.    Conclusion**

For the reasons set forth above, particularly in view of Design Ideas' own role in delaying

its acquisition of information during discovery and its blatant violation of the Stipulated

Protective Order in this case, the Court should deny Design Ideas' motion to extend fact

discovery.

Respectfully submitted,


Date:  May 30, 2008            By:    /s/ Philip J. Moy Jr.                
                                      Philip J. Moy Jr.
                                      Richard J. Minnich
                                      John Zanghi
                                      FAY SHARPE LLP
                                      1100 Superior Avenue, Seventh Floor
                                      Cleveland, OH  44114-2579
                                      Telephone: 216-861-5582
                                      Facsimile: 216-241-1666
                                      Email: pmoy@faysharpe.com
                                             rminnich@faysharpe.com
                                             jzanghi@faysharpel.com

                                      Carl R. Draper
                                      FELDMAN, WASSER, DRAPER & BENSON
                                      1307 South Seventh Street
                                      Springfield, IL  62703
                                      Telephone: 217-544-3403
                                      Facsimile: 217-544-1593
                                      Email: cdraper@feldwass.com

                                      Attorneys for Defendant
                                      Things Remembered, Inc.

**CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION**

Pursuant to L.R. 7.1(B)(4), the undersigned attorney hereby certifies that the foregoing

Defendant's Brief in Opposition to Plaintiff's Motion to Extend Fact Discovery does not contain

more than 7000 words or 45,000 characters.

By:     /s/ Philip J. Moy Jr.
        Philip J. Moy Jr.
        FAY SHARPE LLP
        1100 Superior Avenue
        Seventh Floor
        Cleveland, OH  44114-2579
        Telephone: 216-861-5582
        Facsimile: 216-241-1666
        Email: pmoy@faysharpe.com

        Attorneys for Defendant
        Things Remembered, Inc

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 30, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

      Michael T. Platt
      Garfield Goodrum
      Paul R. Bown

By:    /s/ Philip J. Moy Jr.
      Philip J. Moy Jr.
      FAY SHARPE LLP
      1100 Superior Avenue
      Seventh Floor
      Cleveland, OH  44114-2579
      Telephone: 216-861-5582
      Facsimile: 216-241-1666
      Email: pmoy@faysharpe.com

      Attorneys for Defendant
      Things Remembered, Inc